600 So.2d 1389 (1992)
Darrin R. JARREAU
v.
ORLEANS PARISH SCHOOL BOARD, Francis T. Nicholls School, Michael Sims, Henry Dunbar, and Maksin Insurance Managers, Inc. a/k/a Maksin Management Corporation.
No. 91-CA-1915.
Court of Appeal of Louisiana, Fourth Circuit.
May 28, 1992.
Rehearing Denied July 15, 1992.
*1390 Joseph P. Raspanti, New Orleans, George W. Healy, IV, New Orleans, for appellees.
Trevor G. Bryan, Clare Jupiter, Bryan, Jupiter, Lewis & Blanson, New Orleans, for appellant.
Before SCHOTT, C.J., and JONES and LANDRIEU, JJ.
LANDRIEU, Judge.
We are asked to determine if plaintiff's tort claim prescribed before suit was filed on October 30, 1987. In addition the Orleans Parish School Board urges us to reverse the judgment of the trial court on the basis that the evidence did not justify findings of either duty, breach, or causation.[1]

FACTS:
During the 1986 football season, Darrin Jarreau participated on the Francis T. Nicholls High School team, which was coached by Michael Sims. Although Jarreau had been an All-District running back as a junior in the previous year, his senior season was less productive. Testimony indicated that during a game that season, his wrist was injured when struck by another player's helmet. That injury may have been aggravated in subsequent practice and games, but his coaches did not withhold him from any participation. Allegedly, however, his play was adversely affected by the injury.
At the end of the season and at Jarreau's request, the team trainer, Henry Dunbar, *1391 referred him for treatment to Michael Brunet, M.D., a board certified orthopedist at the Tulane Medical Center, who specializes in sports medicine. At the initial exam on December 8, 1986, Dr. Brunet ordered x-rays to confirm his suspicion of a navicular fracture. The x-ray verified a non-union of the fracture as well as cystic changes, indicating that either the fracture occurred through a cyst or the cyst formed because of collapse. According to Dr. Brunet, the cyst, whether pre- or post-fracture, affected the healing. He testified that, if the cystic changes occurred from the non-union, a delay in treatment of the fracture likely exacerbated the injury by extending the period of recovery and limiting the results of treatment.
Treatment required two surgeries. The first, on December 29, 1986, involved a grafting procedure to lay a peg or graft of bone in the wrist area to provide more bone stock. Since half of the bone lacked a good blood supply, the original procedure was not completely successful even after the use of a bone stimulator, and a re-grafting of the carpal bone was required on August 10, 1987. In addition to the two surgeries, treatment involved immobilization by casts for approximately one year total, the use of the bone stimulator, and therapy to regain strength and motion in the wrist. Jarreau was discharged on March 14, 1988. However, Dr. Brunet concluded that this young man had permanent limitations with his wrist movement, which will preclude vigorous manual labor.
After a trial on the merits, the jury decided that both Henry Dunbar and Michael Sims were negligent and their negligence was the legal cause of damages to Darrin R. Jarreau. Accordingly, the jury awarded the plaintiff $50,000 for "past, present, and future pain and suffering, disability, and mental anguish and $12,725 for past medical expenses." The judge likewise concluded that the Orleans Parish School Board was liable to Jarreau for the negligent acts of its employees, as well as for failing to provide adequate training for its coaching staff, and for failing to provide a physician at the football game where plaintiff was injured. She awarded to Jarreau $80,000 in general damages, plus past medical expenses of $12,724.89.

DISCUSSION:

Prescription
In this tort claim, the prescriptive period is fixed by La.Civ.Code Ann. art. 3492 (West 1953), which provides
Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.
According to the Louisiana Supreme Court in Griffen v. Kinberger, 507 So.2d 821, 823 (La.1987), however, "a prescriptive statute is subject to the discovery rule embodied in the doctrine of contra non valentem agere nulla currit praescriptio." That doctrine suspends the running of prescription during the period in which the cause of action was not known or reasonably knowable to the plaintiff. Id. (citing Corsey v. State of Louisiana Department of Corrections, 375 So.2d 1319 (La.1979).) Therefore, the one (1) year prescriptive period of art. 3492 does not run against an injured party who is ignorant of facts upon which the cause of action is based as long as the ignorance is not willful, negligent or unreasonable. Id. (citing Young v. Clement, 367 So.2d 828 (La.1979)); Goodman v. Dixie Machine Welding & Metal Works, Inc., et al, 552 So.2d 440, 442 (La.App. 4th Cir.1989).
Neither the date that Jarreau's wrist was broken nor the date damage was sustained by the delay in medical referral could be fixed precisely by the parties. It appears most likely that the fracture occurred sometime between September 26 and October 25, 1986. The negligence of Dunbar and Sims did not occur, however, until the referral of the injury to a physician for a diagnosis was unreasonably delayed. There is some evidence to indicate that the failure to refer Jarreau immediately *1392 for treatment was negligent and other to suggest that it was not negligence until the symptoms persisted. Nevertheless, it was not until at least December 8, 1986, when Dr. Brunet x-rayed the wrist and apprised the patient/plaintiff of the non-union of the navicular fracture that Jarreau became aware of the likely damage to him caused by the delay in diagnosis. In fact, knowledge of the facts upon which his cause of action is based most likely occurred after the first surgical procedure on December 29, 1986, wherein the doctor had determined the absence of a good blood supply to half of the area of the fracture, and thereafter noted the bone's failure to mend properly. In either event, the filing of the lawsuit was well within the one year prescriptive period dating from Jarreau's knowledge that damage was sustained by the alleged negligence of Dunbar and Sims.

Elements of Delictual Responsibility
In determining legal responsibility in tort claims, the Louisiana Supreme Court has, for some time, employed the duty-risk analysis. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1369-70 (La. 1984); Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). As explained by this court in Barnes v. Bott, 571 So.2d 183, 185 (La.App. 4th Cir.1990), cert. denied 573 So.2d 1141 (La.1991),
[t]he plaintiff must prove that defendant's conduct was a cause-in-fact of the plaintiff's harm, that the defendant owed a duty of care to protect against the risk involved, that the defendant breached the duty and that actual damages resulted.

Cause-In-Fact
The School Board urges us to conclude that the jury and the trial court erred in holding that causation between the defendants' negligent conduct and any damages the plaintiff suffered had been proved. The only medical evidence presented at trial was that of Dr. Michael Brunet, the orthopedic surgeon, who eventually treated Jarreau for his wrist injury. According to his testimony, the delayed treatment probably adversely affected Jarreau's recovery, if the cyst developed after the fracture. And, since the medical expert had no way of knowing whether the cyst caused the fracture or was caused by the trauma, there is certainly a reasonable possibility of a causal connection between the delay in referral and the disabling condition.
In Housley v. Cerise, 579 So.2d 973, 980 (La.1991) (quoting Lukas v. Insurance Company of North America, 342 So.2d 591, 596 (La.1977)), the Louisiana Supreme Court concluded that an injury is
presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
Having established a reasonable possibility that the delay in medical referral extended the term of treatment and resulted in the disability, Jarreau enjoys a presumption of causation.

Duty
The School Board claims that the court erred in holding that Dunbar and Sims had a duty to the plaintiff under general negligence principles to refer him for medical treatment. Based on the difficulty in diagnosing the plaintiff's particular injury, they argue that the court was clearly wrong in finding the two negligent for "failing to recognize that Darrin sustained a fracture."
All persons have a duty to act reasonably under the circumstances. According to La. Civ.Code Ann. art. 2316 (West 1979),
[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill. *1393 However the imposition of a legal duty depends on a case by case determination. Gresham v. Davenport, 537 So.2d 1144, 1147 (La.1989). In determining whether such obligation exists, the court will consider the relationship and circumstances of the parties. Pitre v. Opelousas General Hospital, 530 So.2d 1151, 1155 (La.1988). It has been said that "the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." W. Keeton, D. Dobbs, R. Keeton, D. Owen, Prosser and Keeton on the Law of Torts § 53, at 359 (5th ed. 1984).
Since the School Board has vicarious liability for the actions of its head coach and athletic trainer in the exercise of their respective functions under La.Civ.Code art. 2320 (West 1979), we must also decide whether these employees had a duty under general negligence principles to obtain treatment for the plaintiff. We agree with appellant that these individuals could not be expected to diagnose the extent of this injury. Indeed, according to the reasonable man standard, they should recognize their limitations in this regard and seek expert medical advice for their players in the face of continuing complaints involving pain and swelling. This responsibility is especially clear in view of the inherent relationship between a coach and his players and the School Board's referral system for medical care through these coaches. Therefore, since this student/athlete presented a persistent medical complaint, we find that Coaches Sims and Dunbar did have a duty to enable Jarreau to access treatment made available to him by the School Board.

Breach
We must consider now whether the duty was breached. The School Board urges us to conclude that, in the absence of expert testimony as to the standard of care of reasonably prudent coaches and/or trainers, a finding of breach is manifestly erroneous. However, the duty of the coaches in this case is that of medical referral, in accordance with established School Board policies, in the face of persistent complaints of pain and swelling. It is a duty which requires no particular expertise and which can be evaluated by the trier of fact without "expert testimony."
The jury decided that the acts or omissions of Sims and Dunbar resulted in an extended period of treatment for this football related injury as well as in a permanent disability. The testimony of the medical expert, while not conclusive, provided evidence to support the jury's determination.
Great deference is given to the findings of the trier of fact, be it jury or judge. Only the factfinder can be aware of the variations in demeanor and tone of voice that contribute to the listener's understanding and belief in what is said. Consequently, when findings are based on credibility, great weight must be given especially to the findings of the trier of fact. As long as there is a reasonable factual basis for the trial court's finding, it will not be disturbed even though the appellate court may recognize that other evaluations and inferences of fact are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). Therefore, we cannot say that the trial court was clearly wrong.
The School Board also argues that the trial court erred in concluding that it failed to train its coaching staff to diagnose injuries and failed to have a physician present at the game at which plaintiff was initially injured. Since we have decided that the School Board is vicariously liable in this case, we need not address these assignments of error.

Comparative Fault
Having found that the School Board breached a duty to this plaintiff and caused him damages, we now consider whether plaintiff is responsible in whole or in part for the resulting damages. At the time the injury was sustained, plaintiff, as an eighteen year old, had attained the age of majority. He chose to participate in football, a contact sport associated with a degree of *1394 pain and injury. After suffering the initial injury and experiencing pain which interfered with his performance on the field, he did not ask to be referred by his coaches for medical care nor did he consult his own physician. Since he hoped to earn a football scholarship to college, he willingly played the remainder of the season. Jarreau, therefore, bears some of the responsibility for the delayed treatment.
Considering all the evidence, we conclude that the trial court was clearly wrong in deciding that Jarreau was without fault in causing the damages that resulted from the delay in treating his football injury. Since we are empowered by La.Code Civ. Proc. art. 2164 to render any judgment which is "just, legal, and proper," we decide that one-third of the fault should be apportioned to Jarreau and that his award from the trial court of $80,000.00 in general damages plus the stipulated past medical expenses of $12,724.89 should be correspondingly reduced to $61,816.91.
AFFIRMED IN PART; AMENDED IN PART.

ON APPLICATION FOR REHEARING
PER CURIAM.
Plaintiff's application for a rehearing is denied.
In response to plaintiff's request for clarification of this court's reduction of the trial court's award, we note that the provision for judicial interest from the date of demand as well as all costs of the trial, as allocated by the trial judge, has not been disturbed. Our decision simply apportioned to plaintiff one-third of the fault and reduced his general damages and past medical expenses accordingly.
Furthermore, we reiterate that only the judgment of the trial court in favor of the plaintiff and against the Orleans Parish School Board has been appealed. It alone is before us.
NOTES
[1] The jury award rendered against the defendants, Henry Dunbar and Michael Sims, by judgment dated August 28, 1990, is not appealed. Counsel for appellant contends that the notice of the signing of the final judgment has not been mailed to counsel, in accordance with La.Code Civ.Proc. art. 1913 (West 1990), so that the appeal delays have not begun to run.