647 So.2d 1288 (1994)
Willie Mae PETERSON, Wife of/and George Lewis Individually and on Behalf of Their Minor Child, Donald Lewis
v.
Jane DOE, ABC Security Company and Orleans Parish School Board.
No. 94-CA-1013.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1994.
*1289 Wayne E. Garrett, New Orleans, for plaintiffs/appellees.
Clare Jupiter, Bryan, Jupiter, Lewis & Blanson, New Orleans, for defendant/appellant.
Before CIACCIO and LOBRANO and PLOTKIN, JJ.
PLOTKIN, Judge.
We are presented in this case with a res nova issue concerning the liability of a public school board for damages suffered by a student as a result of the criminal actions of third parties on or near the school grounds. No reported Louisiana cases have specifically established the extent of a public school board's duty to protect students from such criminal actions.[1] We hold that the traditional duty-risk doctrine applies to this case, rather than the foreseeability doctrine advanced by the Orleans Parish School Board (OPSB), the defendant in this case.
Specifically, OPSB appeals a trial court judgment finding it twenty percent liable for damages suffered by plaintiff Donald Lewis, who was a 17-year-old high school student at the time of the incident, when he was shot outside the gate at Cohen High School. OPSB also contests the trial court's decision to assign no comparative negligence to Lewis. We affirm the finding of liability on the part of OPSB. However, we amend the trial court judgment on comparative negligence to assign five percent of the liability for the shooting to Donald; fifteen percent of the liability is assigned to OPSB.
1. Facts
The two parties presented two different versions of the facts at trial. According to the plaintiff's witnesses, plaintiff Donald Lewis, accompanied by Mione Dunams and Greg Washington, walked out of Cohen High onto a covered breezeway/patio area at approximately 12:10 p.m. on September 18, 1988. At that time, they were approached by Dorothy Stukes, a security counselor at the school, who told Donald that his car's alarm had sounded twice previously. The students looked toward the street where Donald's car was parked just a few feet from the school gates and saw two or three teenaged, black youths in the vicinity of the car. Because of the presence of the black youths, Donald asked Ms. Stukes to accompany him to his car; she refused, saying that she was not responsible for anything that happened outside the school grounds.
Thus, Donald proceeded to his car alone. He got into the car and pulled away from the curb without incident. However, as he started driving toward the school gate to pick up Mione, one of the black youths, wearing a jacket with a hood over his head, stepped into the path of Donald's car, causing Donald to stop abruptly. Donald got out of the car and asked the youth why he had stepped in front of the car, then turned to call Mione to join him in the car. When Donald turned away, the youth started shooting at him, *1290 striking him twice in the left legonce on the ankle and once in the thigh.[2]
The story by the defendant's witnesses, Ms. Stukes and Mr. Albert Brown, a teacher at the school, differed from the story told by the plaintiff's witnesses in the following particulars. Ms. Stukes and Mr. Brown were under the covered patio/breezeway area prior to lunch when they heard car alarms sound on two different occasions. Both times they walked to the gate and onto the sidewalk to see if anyone was around the cars; they did not see anyone either time. When Donald, Mione, and Greg arrived, Donald approached Ms. Stukes and told her someone had been tampering with his car. She assured him that no one was around his car, and walked back to the gate with him. He never asked her to accompany him to his car. Right after walking to the fence with Donald, Ms. Stukes went into the building to perform other duties. She learned Donald had been shot a little later in the day when she returned to the covered patio/breezeway area.
After hearing the evidence, the trial judge found in favor of the plaintiff, awarding Donald $12,000 in general damages plus $3,123.73 in medical expenses against OPSB. The trial judge's oral reasons for judgment indicate that he accepted the plaintiff's version of the story over the defendant's version of the story. The trial court assigned eighty percent of the liability for the shooting to the unknown assailant and twenty percent to OPSB. In finding liability on the part of OPSB, the trial judge stated as follows:
The Court is of the opinion that the evidence supports a determination by the Court that the Orleans Parish School Board breached its obligation to the plaintiff student in failing to furnish him the assistance and security he requested; that the purpose of having a security guard stationed at the local schools is to ensure the safety of the children and other employees in arriving of the party to school, entering the school building, and departing the school grounds
Miss Stukes was negligent in her duties as a security guard, her inaction was unreasonable under the circumstances and is imputable to her employer, the Orleans Parish School Board.
On appeal, OPSB specifies two errors: (1) the trial court's finding that Ms. Stukes was negligent under the circumstances, and (2) the trial court's failure to assign any comparative fault to Donald Lewis.

2. Liability of the public school board

At the outset, we note that Louisiana jurisprudence relating the liability of a public school board for damages caused by the criminal actions of third parties, who are neither students nor teachers, is minimal, and the jurisprudence available fails to provide adequate guidelines. As noted previously, no reported cases deal with the exact issue presented by this case. We also recognize the burgeoning crime problem on or adjacent to school premises, as well as the duty of public school boards and teachers to protect students and deter crimes on school grounds.
In arguing that the trial court improperly found Ms. Stukes negligent under the circumstances, the OPSB makes two general arguments: (1) that the evidence indicates that a reasonable person would not have foreseen the attack, and (2) that Ms. Stukes could not have prevented the attack, even if she had exercised a reasonable degree of supervision. In framing these arguments, OPSB relies on cases dealing with a school board's liability for injuries sustained by its alleged failure to properly supervise students.[3] All of the cases cited by the school *1291 are inapposite to the circumstances of the instant case, which involves a criminal action by a third party right outside the school grounds.
We view this type of case as an ordinary negligence case, requiring the application of the standard La.C.C. art. 2315 negligence duty-risk analysis. Therefore, as previously noted, we reject the OPSB's efforts to frame the issues as pure foreseeability and causation issues. Although foreseeability is a part of the analysis to determine the scope of the liability/scope of the protection prong of the duty-risk analysis, a pure foreseeability analysis is inappropriate under the circumstances of the instant case.
In order to prevail in a negligence action under La.C.C. art. 2315, a plaintiff must prove the following five elements: "(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element)." Roberts v. Benoit, 605 So.2d 1032, 1051 (La.1991). In the instant case, the damages element is not at issue as Donald unquestionably was shot in the leg and unquestionably suffered medical expenses, as well as general damages, as a result of the shooting. Thus, we will consider only the first four elements of the duty-risk analysis.

a. Duty

In the instant case, OPSB has elected to hire "security counselors," like Ms. Stukes, who testified at trial that the most important part of her job is "protecting students." The trial judge found "that the purpose of having a security guard stationed at the local schools is to ensure the safety of the children and other employees in arriving [at the premises of the] school, entering the school building, and departing the school grounds." Therefore, this case involves a situation where the defendant has assumed a duty to protect students, as evidenced by the fact that it hired security counselors specifically for that purpose. Thus, we see this case as analogous to the cases analyzing a business owner's assumed duty to protect patrons from the criminal actions of third parties.
The seminal case on this issue is Harris v. Pizza Hut, 455 So.2d 1364 (La.1984), in which a business owner was held liable for injuries sustained by patrons as a result of a criminal attack caused, in part, by a security guard's breach of his duty to protect patrons from criminal activities. The court held that once the business owner hired a guard to protect patrons from criminal activity, it assumed the duty to require the guard to perform that duty in a reasonable and prudent manner. Id. Further, the court found that the guard had breached the duty to protect the patrons since he negligently failed to be alert and visible at the time of the crime and since he precipitated the criminal action by moving when he had been told not to do so. Id.
In the instant case, we can presume, as did the Harris court, that the presence of the security counselor at the school is evidence that OPSB recognized the duty to protect its students from the criminal actions of third parties. Further, we find that the affirmative duty of protection assumed when the school recognized the duty to protect extends, not only to the school grounds, but also to areas contiguous and reasonably adjacent to the school property, areas which are incidental to school activities. The street where Donald was shot in the instant case, which is adjacent to the school grounds, is located within the area to which the duty extends.

b. Breach of duty

Once the duty has been established, the question becomes whether the security counselor breached that duty because she failed to perform the duty in a reasonable and prudent manner and whether the breach *1292 of the duty caused the injuries to the plaintiff. The same issues were presented to the court in Hanewinckel v. St. Paul's Property & Liability Insurance Co., 611 So.2d 174 (La.App. 5th Cir.1992).[4] In that case, the court found that a guard service hired by the defendant hospital had failed to adequately patrol the area around the hospital, despite having an awareness that an intruder, who was acting suspiciously, was present on the premises. Id. Further, the court found that the plaintiff's injuries were caused by the guard service's breach of its duty to protect the plaintiff from the criminal activities of third persons. Id.
As in Hanewinckel, the security guard in the instant case, under the facts as determined by the trial court, was aware of the presence of the third party prior to the time the third party committed the criminal act which caused the injury to the plaintiff. Thus, the question before this court is whether the trial court was manifestly erroneous in concluding that the security counselor breached her duty to protect the plaintiff by failing to perform that duty in a reasonable and prudent manner. We find that conclusion is not manifestly erroneous under the circumstances.
The trial court found specifically that Donald requested that Ms. Stukes accompany him to his car just prior to the shooting. Her failure "to furnish him the assistance and security he requested" was the basis of the trial court's finding that the security counselor breached her duty to protect Donald by failing to perform that duty in a reasonable and prudent manner. Implicit in the trial court's decision is the finding that Ms. Stukes was aware of the presence of the third parties at the time she refused to accompany Donald as he walked to the car. A failure to provide requested assistance in the face of a known possible threat of danger is obviously a breach of the duty to protect.

c. Cause-in-fact

The cause-in-fact question, which is more difficult, was not specifically addressed by the trial court. OPSB argues that Ms. Stukes' failure to provide Donald with the requested assistance by walking with him to his car was not a cause of the injuries suffered by Donald. Since the shooting occurred after Donald had gotten into his car and pulled away from the curb, OPSB claims that the shooting would have occurred even if Ms. Stukes had accompanied Donald to the car. The plaintiff claims that Ms. Stukes' mere presence would have prevented the unknown assailant from shooting Donald or that Ms. Stukes would have been able to intervene to prevent the shooting.
We find no manifest error in the trial court's implicit finding that the shooting was caused in part by Ms. Stukes' inaction. This decision is consistent with the Harris case, in which the court relied heavily on the premise that the presence of a security guard in a position where he can be seen by potential criminals has a deleterious effect on criminal activity in the area. Under the heading "Cause-in-Fact," the Harris court stated as follows:
It is true that the shooting was apparently an intentional act on the part of the robber. However, applying the "but for" test, one concludes that, but for Walker's [the security guard] lack of visibility, the robbers would not have entered the Pizza Hut, and, but for Walker moving when ordered not to do so by the robber, the shotgun probably would not have been fired and the harm would not have resulted. It follows that the court of appeal was *1293 wrong in substituting its judgment for that of the jury as to Walker's conduct being a cause-in-fact.
Id., 455 So.2d at 1371. It would be just as inappropriate for this court to substitute its judgment for that of the trial judge as to the security counselor's failure to accompany Donald to the car being a cause-in-fact of the shooting in the instant case.

d. Scope of liability/scope of protection element

This prong of the duty-risk analysis, sometimes called "legal causation," has been explained as follows:
The essence of the ... inquiry is whether the risk and harm encountered by the plaintiff fall within the scope of protection of the [duty]. It is a hazard problem. Specifically, it involves a determination of whether the ... duty ... [was] designed, at least in part, to afford protection to the class of claimants of which the plaintiff is a member from the hazard [encountered].
Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 488, 137 So.2d 298, 304 (1962). The finding of legal causation "requires a proximate relation between the actions of a defendant and the harm which occurs and such relation must be substantial in character." Roberts, 605 So.2d at 1056, citing Sinitiere v. Lavergne, 391 So.2d 821, 825 (La.1980).
Although foreseeability is a part of the analysis of legal causation, the Louisiana Supreme Court has noted that "[f]oreseeability is not always a reliable guide." Roberts, 605 So.2d at 1055, quoting Hill v. Lundin & Associates, Inc., 260 La. 542, 549, 256 So.2d 620, 622 (1972). In the Hill case, the supreme court adopted an ease of association test, "which asks how easily the risk of harm can be associated with the rule which was breached." Roberts, 605 So.2d at 1055.
OPSB's primary argument, that the trial court judgment should be reversed because the criminal attack on Donald by the unidentified assailant was not foreseeable, demonstrates the fact that foreseeability indeed is not always a reliable guide for determining legal causation. The problems inherent in using a "narrow definition of foreseeability as the key factor" in determining liability in cases involving a business owner's liability for failure to protect patrons from the criminal actions of third parties were discussed at length in Suzanne Ciaccio, Comment, Business Owners' Duty to Protect Patrons From the Criminal Acts of Third Parties in Louisiana, 53 La.L.R. 1847 (1993), noting that business owners could play a "vital role in deterring crime" if courts realized the "great need to impose a more demanding duty on the business owner." Id. at 1868. Although this case involves the liability of a public school board, rather than the liability of a business owners, the two types of cases are analogous in many ways, as we have already noted. The problems inherent in the application of a pure foreseeability analysis are also present in cases involving the liability of a public school board.
The traditional duty-risk analysis established in Dixie Drive It Yourself and "ease of association" test established by Hill is much more appropriate to our analysis in the instant case than the foreseeability case. Certainly the duty undertaken by OPSB when it hired security counselors was designed to afford protection to the class of claimants of which the plaintiff is a membernamely, students at the schoolfrom the types of hazards encountered by the plaintiff in the instant casenamely, criminal attacks by third parties. Further, the risk of harm encountered by the plaintiffnamely, injuries resulting from criminal attacks by third partiescan be easily associated with the rule which was breachednamely, the security counselor's failure to perform her duty in a reasonable and prudent manner. Thus, the trial court was not manifestly erroneous in determining that the plaintiff proved legal causation.
According, the trial court judgment holding OPSB liable for Donald's injuries is affirmed.

3. Donald's comparative negligence

The trial court assigned no comparative negligence to Donald. OPSB contests this decision, claiming that Donald, who was 17 years old at the time of the shooting, was in as good a position to recognize the danger *1294 as was Ms. Stukes and that Donald should have taken steps to avoid the danger and thus prevent his own injury. Donald claims that he did recognize the danger, as evidenced by the fact that he asked Ms. Stukes to accompany him to his car. However, he claims, he had no choice but to go to the car by himself once Ms. Stukes refused to accompany him.
We find that the trial judge was manifestly erroneous in failing to assign any comparative negligence to Donald under the facts of this case. Although Donald indicated on direct examination that he had no choice but to go to his car alone when Ms. Stukes refused to accompany him, he admitted on cross examination that he could have stayed at the school during the lunch hour and waited for the black youths to leave the area. When questioned about his reason for feeling that he had to leave when he did, Donald said simply that it was "time" for him to go since he had finished his classes; he did not indicate that he had to leave to get to a job or that his schedule otherwise required that he leave immediately. Under the circumstances, we believe that five percent of the negligence for the accident should be assigned to Donald.
Accordingly, the trial court judgment assigning twenty percent of the liability for the shooting to OPSB is amended to assign fifteen percent to OPSB and five percent to Donald.

4. Conclusion

The trial court judgment finding OPSB liable for the injuries incurred by Donald as a result of the September 15, 1988 shooting is affirmed. The judgment is amended to assign eighty percent of the liability to the unknown assailant, fifteen percent to OPSB, and five percent to Donald. In all other respects the judgment is affirmed.
AMENDED; AFFIRMED AS AMENDED.
NOTES
[1] The only reported case in Louisiana involving damages suffered by a student as a result of a third party's criminal action on a school grounds is Doe v. City of New Orleans, 577 So.2d 1024 (La.App. 4th Cir.1991), in which a nine-year-old girl was sexually molested in the school restroom during school hours by an unknown assailant wearing a ski mask. In that case, the court held the school board liable, finding a causal connection between the lack of supervision and the incident which could have been avoided by the exercise of a reasonable degree of supervision. On the issue of duty and breach, the court simply found that the school board had "a duty to formulate and properly promulgate an official policy against allowing young children to leave the classroom alone and use the bathroom during school hours and that the breach of this duty was a legal cause of the victim's injury." That analysis does not apply to the instant case.
[2] One of Donald's witnesses, Henry Muse, said that the youth started shooting at Donald before Donald ever reached the car.
[3] See Turner v. Caddo Parish School Board, 252 La. 810, 214 So.2d 153 (1968) (grandmother "bowled over" by football players during game); Jarreau v. Orleans Parish School Board, 600 So.2d 1389 (La.App. 4th Cir.), writ denied 605 So.2d 1363 and 1378 (La.1992) (student suffered wrist injury during football game); Coleman v. Joyner, 593 So.2d 451 (La.App.2d Cir.1992) (student struck by fellow student); Clark v. Jesuit High School, 572 So.2d 830 (La.App. 4th Cir. 1990) (student shot by another student); Brooks v. Orleans Parish School Board, 560 So.2d 633 (La.App. 4th Cir.1990) (student injured when pushed or fell from sliding board on playground); Nicolosi v. Livingston, 441 So.2d 1261 (La.App. 1st Cir.1983) (student fell on school premises); Comeaux v. Commercial Union Insurance Co., 269 So.2d 500 (La.App. 4th Cir.1972) (desk toppled over on student's hand).
[4] A number of other cases, including cases from this circuit, have previously interpreted the Harris case. See, e.g., Sutter v. Audubon Park Commission, 533 So.2d 1226 (La.App. 4th Cir.1988), writ denied 538 So.2d 597 (La.1989); Mundy v. Department of Health and Human Resources, 609 So.2d 909 (La.App. 4th Cir.1992), aff'd 620 So.2d 811 (La.1993). However, in both of those cases, the court found that the duty assumed by the hiring of a security guard did not extend to requiring the presence of that security guard in the exact location where the attacks occurred. Thus, those cases were decided at the duty level. Hanewinckel is more closely analogous to the instant case because both the security service in Hanewinckel and the security counselor in the instant case were either aware or should have been aware of the presence of the third party prior to the criminal incident. Thus, the question of whether the duty extends to the exact area where the attack occurred is moot in both cases.