TERRI F. LOVE, Judge.
| jThis appeal arises from a shooting at a Motel 6 in New Orleans East, which rendered the plaintiff a paraplegic.' The plaintiff, a guest at the Motel 6, was in the Motel 6 parking lot when he was shot by an armed robber. Plaintiff filed suit against the national Motel 6 franchise, as well as the local franchisee, alleging that the motel was liable because a broken gate enabled the armed robber to enter the parking lot. The national Motel 6 franchise and its insurer filed a joint motion for summary judgment contending that it owed no duty to the plaintiff, as it did not control day-to-day operations at the local Motel 6. The trial court found that no genuine issues of material fact existed as to the lack of duty, and granted the motion for summary judgment. We find that no genuine issues of material fact exist because the national Motel 6 franchise did not owe a duty to the plaintiff pursuant to the doctrines of direct negligence, actual authority, or apparent authority. Accordingly! we affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Jorge A. Espinosa was staying at the Motel 6 (“Motel”) on Gentilly Boulevard for approximately two weeks when he was shot by an armed robber in the Motel parking lot. The shooting rendered Mr. Espinosa a paraplegic. Mr. l2Espinosa filed a Petition for Damages against Accor Franchising North America, LLC n/k/a G6 Hospitality LLC (“Accor”); Accor’s insurer, Arch Specialty Insurance Company (“Arch”); the owner and operator of the franchise in question, Bayou Hospitality, LLC, (“Bayou”); and Bayou’s insurer, Century Surety Company (“Century”),[1] contending that a missing section in the *126 Motel’s fence enabled the armed robber to enter the premises and shoot him.
Accor filed a cross-claim seeking defense and indemnity from Bayou and Century. Accor and Arch filed a Joint Motion for Summary Judgment asserting that no genuine issues of material fact existed because there was no evidence that Accor controlled, owned, or operated the Motel. The trial court agreed and granted their Joint Motion for Summary Judgment. Mr. Espinosa’s devolutive appeal followed.
Mr. Espinoza contends that the trial court erroneously granted Accor and Arch’s Joint Motion for Summary Judgment because genuine issues of material fact exist as to Accor’s direct negligence, actual authority over Bayou, and apparent authority over Bayou.

STANDARD OF REVIEW

“The appellate court standard of review of summary judgments is de novo.” Brunet v. Fullmer, 00-0644, p. 2 (La.App. 4 Cir. 1/10/01), 777 So.2d 1240, 1241. We must use the “same criteria that govern the district court’s consideration of whether summary judgment is appropriate.” Schroeder v. Bd. of Sup’rs of Louisiana State Univ., 591 So.2d 342, 345 (La.1991).
A motion for summary judgment shall be granted “if the pleadings, ^depositions, answers to interrogatories, and admissions, together with the affidavits, if any ... show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2). The Louisiana Supreme Court “has recognized that a ‘genuine issue’ is a ‘triable issue,’ an issue in which reasonable persons could disagree.” King v. Parish Nat’l Bank, 04-0337, p. 8 (La.10/19/04), 885 So.2d 540, 546, quoting Jones v. Estate of Santiago, 03-1424, p. 6 (La.4/14/04), 870 So.2d 1002, 1006. Further, the Louisiana Supreme Court “has defined a ‘material fact’ to be one in which ‘its existence or nonexistence may be essential to plaintiffs cause of action, under the applicable theory of recovery.’ ” Id.
“The burden of proof remains with the movant.” La. C.C.P. art. 966(C)(2). “However, if the movant will not bear the burden of proof at trial on the matter” then the movant does not have “to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.” La. C.C.P. art. 966(C)(2). “Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion.” Schroeder, 591 So.2d at 345. “The party who defended against the motion for summary judgment must have his properly filed allegations taken as true and must receive the benefit of the doubt when his assertions conflict with those of the movant.” Id.

EVIDENCE PRESENTED

Kishor Desai, an officer and member of Bayou, stated in his affidavit that Bayou “was the owner and operator of the motel and property.” He also stated that |4“Accor did not own, operate, have custody of or garde over the Motel 6 ... or the adjoining premises....” Mr. Desai stated that Bayou oversaw and controlled the day-to-day operations at the Motel. Additionally, Mr. Desai stated that the franchise agreement provided that Bayou was solely responsible for the safety and security of those on the Motel premises. Lastly, Mr. Desai stated that Accor did not have “any employees, agents, [or] repre *127 sentatives” at the Motel on the day of the shooting or on a day-to-day basis.
Further, Michael McGeehan, Accor’s Vice President of Franchise, stated in his affidavit, like Mr. Desai, that Bayou owned and operated the Motel and property. Also, like Mr. Desai, Mr. McGeehan stated that the franchise agreement provided that Bayou was solely responsible for the safety and security of the people on the Motel premises. Further, Accor did not exercise control over security and safety measures at the Motel. Mr. McGeehan testified in his deposition that Accor did not exercise any control over the day-to-day operations of the Motel. Mr. McGeehan also testified that Accor did not have custody or garde over the Motel. Mr. McGeehan stated that Accor did not have employees on the premises. In regards to fencing, Mr. McGeehan testified in his deposition:
[i]f they had a fence, we would expect them to help keep that — maintain that fence. We don’t require fences. It’s up to the franchisee to decide if that’s what they need to do. Many — most of your locations do not have fences, so — many municipalities prohibit them. It doesn’t really create a welcoming environment, so we don’t — unless it’s absolutely needed.
Mr. McGeehan never visited the Motel.
Robert Hill, Accor’s regional director of franchise operations for region 16, reiterated that Accor did not have custody or garde over the Motel. Mr. Hill stated that Accor was not responsible for safety and security at the Motel. Mr. Hill | (¡testified that “we can’t tell them [franchisees] to do anything. We can only advise them because they’re basically — they’re a franchisee.” Accor did not “hire and fire” the Motel employees. Lastly, Mr. Hill emphasized the Accor had no control over the daily operations of the Motel.
The franchise agreement between Accor and Bayou provides that:
[franchisee shall be solely responsible for all employment decisions and functions at and for the Motel, including, without limitation, those related to hiring, firing, training, wage and hour requirements, payment and provision of wages, salaries and fringe benefits, record-keeping, supervision and discipline.
Further, the franchise agreement states that it is the franchisee’s “sole responsibility to maintain the safety and security of its employees, guests and others who may be on the Motel premises.”
Mr. Hill visited the Motel for inspection prior to the grand opening, but stated that “[t]here was nothing wrong with the fence when [he] was there.” Mr. Hill would have included information about the fence in his report if the fence was deficient during his inspection. Mr. Hill stated that there was an electronic gate at the front of the property that would close automatically at midnight. However, Mr. Hill testified that “we don’t require fences except around pools.”
John Teegarden, plaintiffs expert, stated in his affidavit that the fence around the Motel was damaged in “August 2005 and remained in a state of disrepair until after the [sic] August 17, 2010.”
Mr. Espinosa testified that he typically stays at Motel 6 chains 50% to 75% of the time. Guillermo Garcia, one of Mr. Espi-nosa’s coworkers, testified in his deposition that the group of workers selected the Motel because it was in a “good area.” Arturo Valencia, another of Mr. Espinosa’s coworkers, testified that the |figroup of workers chose the Motel together.

STRICT LIABILITY

Mr. Espinosa contends that Accor, as the national Motel 6 franchisor, “had *128 actual or constructive knowledge of a huge defect in the security fence around the perimeter of Bayou’s property and [was] aware that such a defect would pose a safety and security problem.” Mr. Espi-nosa asserts that “Accor’s representative deliberately or inadvertently ignored the defective condition and chose not to exercise Accor’s contractual right to have Bayou repair the fence.” According to Mr. Espinosa, these constituted independent acts of negligence by Accor.
“Under strict liability, it is the defendant’s legal relationship with the property containing a defect that gives rise to a duty.” Wiley v. Sanders, 34,923, p. 4 (La.App. 2 Cir. 8/22/01), 796 So.2d 51, 55. “[T]he finding of the existence of a defect alone is not sufficient to establish liability.” Id. “Under either negligence or strict liability, the absence of an unreasonably dangerous condition of the property implies the absence of a duty.” Wiley, 34,923, p. 5, 796 So.2d at 55. “[T]he plaintiff must prove that the defendant had custody or garde of the thing which caused the damage, that the thing contained a defect (a condition posing an unreasonable risk of harm to the plaintiff), and that this defective condition caused the plaintiffs injuries.” Id. “Whether a risk is unreasonable depends on a balancing of all relevant factors, e.g., the utility of the thing that caused the damage, the intended use of the property, and other social considerations.” Id. “[N]ot every minor imperfection or irregularity will give rise to liability.” Cuevas v. City of New Orleans, 99-2542, p. 8 (La.App. 4 Cir. 6/21/00), 769 So.2d 82, 87. “The defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary 17care under the circumstances.” Id.
It is undisputed that Accor did not own the Motel or the land. Likewise, Accor did not manage the Motel. Accordingly, Accor, bearing the initial burden of proof on the Motion for Summary Judgment, established that it did not have custody or garde over the fence, which is a required finding for strict liability. Additionally, Mr. Espinosa suffered harm from the acts of an intervening third party who chose to enter the Motel parking lot for criminal activity. Assuming arguendo that Accor knew about the damaged fence and that it had custody or garde over the fence, the gap in the fence did not constitute an unreasonably dangerous condition that would create liability.
Accor bore the initial burden of proof on the Motion for Summary Judgment. Once Accor demonstrated that Mr. Espinosa’s injuries were caused by the shooter, the burden shifted to Mr. Espinosa to show that the damaged fence was an unreasonably dangerous condition. The evidence shows that the Motel’s front gate closed automatically at midnight. A pedestrian walkway was present alongside the open front gate. The shooting occurred prior to midnight, so the front gate was open. The shooter could have entered the Motel parking lot through numerous access points, including but not limited to the gap in the fence, the front gate, or the pedestrian walkway. Therefore, Mr. Espinosa failed to present evidence sufficient to establish that the missing section of fence created an unreasonably dangerous condition such that a duty was created and imposed upon Accor.

NEGLIGENCE

Mr. Espinosa contends that Accor was directly negligent or liable through the doctrines of apparent or actual authority-
1 8“To establish negligence the plaintiff must prove: 1) duty of care to the plaintiff; 2) breach of the duty; 3) cause- *129 in-fact; 4) legal causation (scope); and 5) damages.” Chaisson v. Avondale Indus., Inc., 05-1511, p. 8 (La.App. 4 Cir. 12/20/06), 947 So.2d 171, 180. “This Court must consider if ‘the plaintiff has any law (statutory, jurisprudential, or arising from the general principles of fault) to support that the defendant owed him a duty.’ ” Chaisson, 05-1511, p. 9, 947 So.2d at 180, quoting Lemann v. Essen Lane Daiquiris, Inc., 05-1095, p. 8 (La.3/10/06), 923 So.2d 627, 633. Whether a duty is owed is a question of law, and “[t]he court may take ‘various moral, social, and economic factors’ into account when determining whether to impose a duty.” Chaisson, 05-1511, p. 9, 947 So.2d at 181, quoting New Orleans Train Car Leakage Fire Litig., 00-0479, p. 47 (La.App. 4 Cir. 6/27/01), 795 So.2d 364, 394. The factors the court considers include:
1) ‘the fairness of imposing liability;’ 2) ‘the economic impact on the defendant and on similarly situated parties;’ 3) ‘the need for an incentive to prevent future harm;’ 4) ‘the nature of defendant’s ac-' tivity;’ 5) ‘the potential for an unmanageable flow of litigation;’ 6) ‘the historical development of precedent;’ and 7) ‘the direction in which society and its institutions'are evolving.’

Id.

“[A] business establishment is under a duty to take reasonable care for the safety of its patrons, but it is not the insurer of their safety.” Mundy v. Dep’t of Health & Human Res., 609 So.2d 909, 912 (La.App. 4th Cir.1992). This Court provided that when a plaintiff is aggrieved by the criminal act(s) of another that:
[t]his duty does not extend to unforeseeable or unanticipated criminal acts by independent third persons. Only when the owner, management or employees of a business have or should have knowledge of a third person’s intended injurious conduct that is about to occur and which is within the power of the owner, management |aor employees to protect against, does the duty arise.
Mundy, 609 So.2d at 912-13. Thus, Accor did not owe Mr. Espinosa a duty to protect him from the criminal acts of a third party.

Actual Authority

Mr. Espinosa asserts that “Accor had the legal right to exercise day-to-day control over every aspect of Bayou’s operations.”
“Under the provisions of La. C.C. art. 2320, ‘[mjasters and employers are answerable for the damage occasioned by servants and overseers, in the exercise of the functions in which they are employed.’ ” Marchetta ex rel. Marchetta v. CPC of Louisiana, Inc., 99-0485, p. 6 (La.App. 4 Cir. 3/22/00), 759 So.2d 151, 155, quoting La. C.C. art. 2320. “However, vicarious liability does not apply when an independent contractor relationship exists.” Marchetta, 99-0485, p. 6, 759 So.2d at 155. The court considers the following factors to determine if an independent contractor relationship is present:
(1) whether there is a valid contract between the parties; (2) whether the work being done is of an independent nature, such that the contractor may employ a non exclusive means in accomplishing it; (3) whether the contract calls for specific piecework as a unit to be done according to the independent contractor’s own methods, without being subject to control and direction of the principal, except as to the result of the services rendered; (4) whether there is a specific price for the overall undertaking agreed upon; and (5) whether the duration of the work is for a specific time and hot subject to termination or discontinuance at the will of either side *130 without a corresponding liability for its breach.
Certified Cleaning & Restoration, Inc. v. Lafayette Ins. Co., 10-948, p. 6 (La.App. 5 Cir. 6/14/11), 67 So.3d 1277, 1281. “However,'the most important test in determining whether or not an independent contractor relationship exists involves the employer’s control over the work.” Morales v. Davis Bros. Const. Co., 94 0902, p. 4 (La.App. 4 Cir. 12/15/94), 647 So.2d 1302, 1305.
The actual authority of a franchisor is similar to that of an independent contractor in the case sub judice. The franchise agreement provides that the safety and security of the Motel patrons was Bayou’s sole responsibility. Bayou was also solely responsible for all employment decisions. Accor did not manage the Motel. Further, it is undisputed that Accor did not own the Motel or the land. Conclusively, the evidence demonstrated that Accor did not have the authority to exercise control over the day-to-day operations of the Motel. Therefore, the doctrine of actual authority did not impose a duty on Accor, as the franchisor, to protect Mr. Espinosa from being shot by an armed robber.

Apparent Authority

Lastly, Mr. Espinosa avers that Accor is liable because “there is evidence that Mr. Espinosa relied on the reputation of Motel 6 as a basis for choosing this particular motel as a place to stay, and no evidence that there was any decal or other information posted to let Mr. Espinosa know that he was dealing with a franchisee, not with the owner of the franchise.”
“Apparent authority is an es-toppel principle which operates in favor of third persons seeking to bind a principal for unauthorized acts of an agent.” Indep. Fire Ins. Co. v. Able Moving & Storage Co., Inc., 94-1982, p. 6 (La.2/20/95), 650 So.2d 750, 752. “When the apparent scope of an agent’s authority, the indicia of authority, is relied upon by innocent third parties to their detriment, the principal is liable.” Id. “The burden of proving apparent authority is on the party relying on the mandate.” Boulos v. Morrison, 503 So.2d 1, 3 (La.1987).
Mr. Espinosa asserts that he relied upon the Motel 6 signs and logos as a sign of safety when deciding to stay at the Motel. However, he failed to present In any evidence of such reliance when opposing Ac-cor’s Motion for Summary Judgment. Mr. Espinosa stated in his deposition that he stays at Motel 6s about 50% to 75% of the time and that he generally looks for a safe place. He also testified that he looks for “[s]omething that can be close to my jobs [sic].” None of Mr. Espinosa’s testimony presented in favor of or in opposition to the Motion for Summary Judgment showed that he relied upon the national Motel 6 franchise in making the decision to stay at the Motel. Further, Mr. Garcia and Mr. Valencia testified that all of the workers decided together that they would stay at the Motel. Accordingly, the requirement for apparent authority that an innocent third party rely upon a representation to his detriment was not present. Therefore, no genuine issues of material fact existed as to the application of a duty pursuant to the doctrine of apparent authority. The trial court did not err in granting the Joint Motion for Summary Judgment.

DECREE

For the above-mentioned reasons, we find that no genuine issues of material fact exist because Accor did not owe Mr. Espi-nosa a duty to protect him from the criminal acts of a third party. Therefore, Accor is not liable pursuant to the theories of direct negligence, actual authority, or ap *131 parent authority. The trial court did not err in granting the Joint Motion for Summary Judgment, and we affirm.
AFFIRMED

. The other defendants sued by Mr. Espinoza are not parties to this appeal.