STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

*******

2022 CA 0742

WILLIAM FLYNN & BILLIE FLYNN

VERSUS

ANYTIME FITNESS, LLC, THORNHILL BROTHERS FITNESS, LLC D/B/A ANYTIME FITNESS, MARKEL INSURANCE COMPANY, ET AL.

JUDGMENT RENDERED: **DEC 2 9 2022**

*******

Appealed from the
Eighteenth Judicial District Court
Parish of West Baton Rouge • State of Louisiana
Docket Number 45,828

The Honorable J. Kevin Kimball, Presiding Judge

*******

Robert M. Marionneaux, Jr.
B. Cade Melancon
Baton Rouge, Louisiana

COUNSEL FOR APPELLANTS
PLAINTIFFS—William Flynn and
Billie Flynn

Danica Benbow Denny
Kathleen P. Rice
Phoebe A. Hathorn
Colton V. Acosta
New Orleans, Louisiana

COUNSEL FOR APPELLEE
DEFENDANT—Anytime Fitness, LLC

Andre C. Gaudin
E. Alexis Bevis

COUNSEL FOR APPELLEE
Thornhill Brothers Fitness, LLC
d/b/a Anytime Fitness and Markel
Insurance Company

*******

BEFORE: WELCH, PENZATO, AND LANIER, JJ.

**WELCH, J.**

The plaintiffs, William Flynn and his wife, Billie Flynn, appeal a summary judgment granted in favor of defendant, Anytime Fitness, LLC ("Anytime"), dismissing the plaintiffs' claims against Anytime with prejudice. Based on the undisputed material facts, we find, as a matter of law, that Anytime did not owe a duty to the plaintiffs, and thus was entitled to summary judgment. Therefore, we affirm the judgment of the trial court.

## BACKGROUND

Thornhill Brothers Fitness, LLC d/b/a Anytime Fitness ("Thornhill") has owned and operated the Anytime Fitness gym located in Port Allen, Louisiana ("the Thornhill gym") since November 2013. The Thornhill gym is a franchise of Anytime. On November 17, 2019, Mr. Flynn, who was a member of the Thornhill gym, entered and commenced to use an inversion table that was located within the facility. The inversion table was a used piece of equipment purchased in "early [20]17" by Thornhill from the internet sales platform "Craig's List." Notably, the purchase and placement of the inversion table in the Thornhill gym was in violation of Thornhill's franchise agreement with Anytime, which required that all equipment be new and be ordered through a designated vendor.

While Mr. Flynn was using the inversion table, it came apart, and Mr. Flynn fell on his head, causing severe injuries to his cervical spine. Mr. Flynn and his wife filed a petition seeking damages from Anytime, the franchisor; Thornhill, the franchisee; and Markel Insurance Company, Thornhill's insurer. The plaintiffs' claims for damages against the defendants were based on general negligence, custodial or premises liability, and vicarious liability or *respondeat superior*.

Anytime filed a motion for summary judgment, seeking the dismissal of the plaintiffs' claims against it on the basis that it was not responsible for Mr. Flynn's injuries or the plaintiffs' damages under any theory of liability. Anytime pointed

2

out that it exerted no operational control over the day-to-day activities at the Thornhill franchise location and was not responsible for selecting or maintaining the equipment that was involved in the incident. Further, Anytime pointed out that the existence of the inversion table at the Thornhill gym was a violation of the franchise agreement, which required Thornhill to utilize new equipment from approved vendors. Thus, Anytime maintained that it could not be liable for the plaintiffs' injuries under the theories of negligence or custodial liability. As to vicarious liability, Anytime maintained that no employment relationship existed between Anytime and Thornhill nor any of Thornhill's employees; therefore, it could not be liable for the plaintiffs' injuries based on vicarious liability or *respondeat superior.*

After a hearing, the trial court granted Anytime's motion for summary judgment and dismissed the plaintiffs' claims against it. The trial court specifically found that there were no genuine issues of material fact and that Anytime was entitled to judgment as a matter of law, as there was a lack of evidence establishing that Anytime had any actual or constructive knowledge of a defect in the inversion table, that Anytime was negligent or otherwise owed a duty to the plaintiffs, or that Anytime exercised any control over the day-to-day operations of the Thornhill gym. The plaintiffs' claims based on vicarious liability or *respondeat superior* were also dismissed as unopposed in response to the motion. A judgment in accordance with the trial court's ruling was signed on March 9, 2022, and it is from this judgment that the plaintiffs appeal.[1]

## SUMMARY JUDGMENT

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to determine whether there is a genuine need for trial.

---

[1] On appeal, the plaintiffs have not challenged the dismissal of their claims based on vicarious liability or *respondeat superior* (La. C.C. art. 2320).

**Louisiana Workers' Compensation Corporation v. B, B & C Associates, LLC,** 2017-1342 (La. App. 1st Cir. 4/9/18), 249 So.3d 18, 22. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that governs the trial court's determination of whether summary judgment is appropriate. **In re Succession of Beard,** 2013-1717 (La. App. 1st Cir. 6/6/14), 147 So.3d 753, 759-60.

The initial burden of proof is on the party filing the motion for summary judgment. La. C.C.P. art. 966(D)(1). The mover may meet this burden by filing supporting documentary evidence consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions with the motion for summary judgment. La. C.C.P. art. 966(A)(4). The mover's supporting documentary evidence must prove the essential facts necessary to carry his burden. Thus, in deciding a motion for summary judgment, it must first be determined whether the supporting documents presented by the mover are sufficient to resolve all material fact issues. **Crockerham v. Louisiana Medical Mutual Insurance Company,** 17-1590 (La. App. 1st Cir. 6/21/18), 255 So.3d 604, 608.

Once the motion for summary judgment has been properly supported by the moving party, and the mover has made a prima facie showing that the motion for summary judgment should be granted, the burden then shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to his or her opposition, sufficient to establish that he or she will be able to satisfy his or her evidentiary burden of proof at trial, that is, the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a

4

matter of law. See La. C.C.P. art. 966(D)(1); **Trichell v. McClure**, 2021-1240 (La. App. 1st Cir. 4/8/22), 341 So.3d 856, 860. If the non-moving party fails to produce factual support in opposition sufficient to establish that he or she will be able to satisfy his or her evidentiary burden of proof at trial, La. C.C.P. art. 966(D)(1) mandates the motion for summary judgment be granted. *Id.*

## LIABILITY

As previously set forth, the plaintiffs' claims against Anytime were based on the principles of negligence (La. C.C. art. 2315 and 2316) and custodial or premises liability (La. C.C. art. 2317 and 2317.1). Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under the general principles of negligence. **Pinsonneault v. Merchants & Farmers Bank & Trust Co**, 2001-2217 (La. 4/3/02), 816 So.2d 270, 275. In order for liability to attach under the duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of the duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was the legal cause of the of the plaintiff's injuries (the scope of protection element); and (5) actual damages (damages element). *Id.* at 275-276; **Bellanger v. Webre,** 2010-0720 (La. App. 1st Cir. 5/6/11), 65 So.3d 201, 207, writ denied, 2011-1171 (La. 9/16/11), 69 So.3d 1149. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. *Id.* The threshold question in any duty-risk analysis is whether the defendant owed a duty to the plaintiff. **Pinsonneault,** 816 So.2d at 276. Whether a duty is owed is a question of law. *Id.*

Under La. C.C. art. 2317 and 2317.1, it is the defendant's legal relationship with the property containing a defect that gives rise to a duty. See **Espinosa v.**

5

**Accor North America, Inc.,** 2014-1276 (La. App. 4th Cir. 7/8/15), 174 So.3d 123, 128. With respect to custodial or premises liability, the following elements also be proven by the plaintiff: (1) the defendant either owned or had care, custody, or control or "garde" of the property that caused the damage; (2) the property had a condition that created an unreasonable risk of harm to persons on the premises; (3) the unreasonably dangerous condition was a cause-in-fact of the plaintiff's injuries; and (4) the defendant had actual or constructive knowledge of the risk. See **Ordeneaux v. Arkel Food Servs., L.L.C.,** 2020-1312 (La. App. 1st Cir. 6/4/21), 327 So.3d 521, 527, writ denied, 2021-00967 (La. 10/19/21), 326 So.3d 264.

In determining whether a defendant has care, custody, and control or "garde" of a thing, "courts should consider (1) whether the person bears such a relationship as to have the right of direction and control over the thing; and (2) what, if any, kind of benefit the person derives from the thing." **Dupree v. City of New Orleans,** 99-3651 (La.8/31/00), 765 So.2d 1002, 1009. When a franchise relationship is involved, the courts of our state have held that, if the franchisor does not exert day-to-day control over its franchisee's management procedures, then the franchisor does not have custody or "garde" of the franchisee's alleged defective thing or premises. See **Nearhood v. Anytime Fitness,** 2015-1142 (La. App. 3rd Cir. 5/4/16), 191 So.3d 707, 710; **Espinosa,** 174 So.3d at 130; **Taylor v. Holiday Inn, Inc.,** 595 So.2d 735, 736 (La. App. 5th Cir. 2/18/92); see also **Chambers–Johnson v. Applebee's Restaurant,** 2012-98 (La. App. 5th Cir. 9/11/12), 101 So.3d 473, 476-477.

Herein, based on our *de novo* review of the documents offered by Anytime in support of its motion for summary judgment, Anytime established that it did not have day-to-day control over Thornhill's management procedures or the activities at the Thornhill gym; it did not own the building or land on which the Thornhill

gym was located or the inversion table itself; and it did not select, approve, maintain, or require Thornhill to purchase the inversion table involved in the incident.

The affidavit of Jennifer Yiangou, the Senior Vice President of Franchise Administration for Anytime, established that Anytime owned the trademark "ANYTIME FITNESS®" (the "Running Man Logo") and certain other trademarks, trade names, service marks, logos, designs, and commercial symbols (collectively, the "Names and Marks"), that Anytime developed a franchise "System" under which it licenses its franchisees to use the Names and Marks, and that there were over 4,971 operating franchised fitness centers across the world. According to Ms. Yiangou, Thornhill executed a franchise agreement with Anytime dated November 1, 2013, with respect to the operation of the Thornhill gym, and in accordance with the franchise agreement, Anytime collected a flat royalty fee of $699 per month from Thornhill. Ms. Yiangou stated that the Thornhill gym was independently owned by Thornhill and that all profits and revenues from the Thornhill gym belonged to Thornhill. Ms. Yiangou also stated that Anytime did not own the building or land on which the Thornhill gym was located.

The franchise agreement between Anytime and Thornhill, which was attached to Ms. Yiangou's affidavit, specifically provided as follows:

> [8]G. Manual …You will operate your business in conformance with all mandatory provisions of these manuals. You acknowledge that these manuals are designed to protect our standards and systems and our Marks, and not to control the day-to-day operation of your Anytime Fitness Center.

> * * *

> [9]H. Compliance with Our Standards. You will operate your Anytime Fitness Center through strict adherence to any mandatory standards, specifications[,] and policies of the System as they exist from time to time, in order to ensure compliance with the quality standards of the System. However, you will at all times be

7

responsible for the conduct of the day-to-day operation of your Anytime Fitness Center and for the terms of employment for your employees.

1. You acknowledge that the mandatory standards, specifications[,] and policies we establish are not aimed at the day-to-day operation of your business, which will solely be within your control, but are merely intended to preserve the goodwill of the System and Marks.

Section 11(A) of the franchise agreement further provided:

You alone will be responsible for any claim, action, loss, damage, liability, injury[,] or death arising out of, or relating to, the operation of your Anytime Fitness Center or arising out of, or relating to, your acts or omissions or the acts of omissions of any of your agents, employees[,] or contractors in connection with the operation of your Anytime Fitness Center.

The affidavit of Ms. Yiangou also established that Anytime did not purchase or provide financing for any fitness equipment for the Thornhill gym, had never employed any personnel at the Thornhill gym, and did not hire Thornhill's employees, schedule those employees, or pay their salaries. Ms. Yiangou stated that Anytime entered into a renewal of Thornhill's franchise agreement around November 2, 2019, and at the time of renewal, Anytime had no record of any default or breach of the franchise agreement by Thornhill nor any record of any complaints from any consumer regarding the Thornhill gym. She also stated that Thornhill never notified Anytime that it purchased an inversion table from Craig's List for use in the Thornhill gym and that Anytime did not approve either the purchase of the inversion table by Thornhill from Craig's List or its use in the Thornhill gym. Ms. Yiangou further stated that Anytime had no control over the day-to-day maintenance performed on the inversion table, had no obligation to perform maintenance on the inversion table, and never physically inspected any of the equipment at the Thornhill gym.

According to the deposition testimony of the corporate representative of Thornhill, Joe Thornhill, Thornhill was responsible for selecting the type of equipment purchased for the Thornhill gym, but acknowledged that the franchise

8

agreement required Thornhill to purchase equipment from vendors approved by Anytime. Mr. Thornhill further acknowledged that, despite this language, he purchased the inversion table from an individual on Craig's List. Mr. Thornhill confirmed that Anytime did not finance any of the equipment purchases for Thornhill, that Anytime had no control as to where the equipment in the gym would be located, and that no representative from Anytime visited the Thornhill gym after it acquired the inversion table at issue.

Thus, Anytime presented sufficient evidence to establish that there was no genuine issue of material fact that Anytime did not have custody or "garde" of either the inversion table itself or the Thornhill gym's premises and that Anytime was neither aware of nor had knowledge that Thornhill had purchased a used inversion table from Craig's List for the Thornhill gym in violation of the franchise agreement. Consequently, the burden shifted to the plaintiffs to produce factual support sufficient to establish that they would be able to satisfy their evidentiary burden of proof at trial or that a genuine issue of material fact exists and that Anytime was not entitled to judgment as a matter of law. In opposition to the motion for summary judgment, the plaintiffs maintained that there were issues of fact as to whether Anytime had control over the day-to-day operations of the Thornhill gym and whether Anytime should have discovered the inversion table since the franchise agreement provided that Anytime should have, but did not, inspect the Thornhill gym.

In this regard, the plaintiffs pointed to Anytime's operation manual, its franchise disclosure document, and its franchise agreement wherein Anytime, on numerous occasions, required, instructed, directed, and mandated that its franchisees, such as the Thornhill gym, conduct its business in accordance with specific terms and conditions, such as billing and payment processing and using approved building materials, fixtures, furniture, equipment, and signs. However,

9

we find this does not establish that Anytime actually exercised any custody, control, or "garde" over the Thornhill gym, the inversion table or any other equipment, the employees, or the premises. Indeed, as set forth above, the franchise agreement specifically stated that the standards, specifications, and policies that it mandated therein were not aimed at the day-to-day operation of the Thornhill gym, but rather, were intended to preserve the Anytime brand standards and further, that the day-to-day operation of the Thornhill gym would be the responsibility of and within the control of Thornhill.

Next, the plaintiffs claim that Ms. Yiangou admitted during her deposition "that, to a certain degree, [Anytime] *does exert at least some control* over the *day-to-day operations* of its franchisee, [Thornhill]." (Emphasis original). As to this purported admission, the following colloquy occurred during Ms. Yiangou's deposition between Ms. Yiangou and counsel for the plaintiffs:

BY [Counsel for the Plaintiffs]:

Q. This Franchise Agreement ... sets out the terms and conditions, which are applicable as between the franchisor and the franchisee?

* * *

THE WITNESS: The Franchise Agreement is there to lay out that the franchisor is offering their trademark and their support to a franchisee.

And the franchisee, it spells out that they're responsible for the day-to-day operations, and they've got full control of the business.

BY [Counsel for the Plaintiffs]:

Q. Well, you say that, Ms. [Yiangou], but isn't it true that [Anytime], the franchisor, controls every aspect of the local franchise operation?

* * *

For example, [Anytime] controls the signage of the facility, do they not?

* * *

THE WITNESS: No. [Anytime], the franchisor does not control the majority of the business. Like I said, we offer them access to the trademark, we offer them support, they pay royalties, but the franchisees, they make decisions on what kind of equipment they're going to buy, what kind of signage they're going to install.

They have a lot of decisions as independent business owners.

The plaintiffs claim that Ms. Yiangou's statement that Anytime did not control the majority of the "business" was a concession and admission that Anytime exerted some or partial control over the day-to-day operations of their franchisee. We disagree. Ms. Yiangou statement in this regard was solely in reference to "the business;" she did not mention, in that particular statement, the day-to-day operations of the franchise, nor did she suggest, in any way, that Anytime exerted some, partial, or any control over the day-to-day operations of the franchise. Rather, Ms. Yiangou unequivocally stated that the franchisee was responsible for the day-to-day operations, that the franchisee had full control of the business, and that Anytime's role was limited to offering the franchisees Anytime's trademark and support. Accordingly, we find that the plaintiffs' evidence was insufficient to establish a genuine issue of material fact as to whether Anytime had any control over the day-to-day procedures of the Thornhill gym or otherwise had custody, control or "garde" of the inversion table or the Thornhill gym premises.

With respect to the inspection of the Thornhill gym and the discovery of the inversion table, the plaintiffs point to the following language in the franchise agreement:

[9(H)]3. Within one hundred eighty (180) days after you open your Anytime Fitness Center, we will send someone to visit your center.

\* \* \*

R. Visits. A representative of ours may make visits to your Anytime Fitness Center to ensure compliance with all required

11

standards, specifications[,] and procedures. Our representative will be allowed to inspect the condition and operation of your Anytime Fitness Center and all areas of your Anytime Fitness Center at any time during your business hours.

The plaintiffs also point to the testimony of Mr. Thornhill and Ms. Yinagou that Anytime had not conducted an inspection of the Thornhill gym. However, we also find that this evidence is insufficient to establish that Anytime should have discovered the inversion table or that it was required to inspect the Thornhill gym. While the franchise agreement provided that Anytime would inspect the Thornhill gym within one hundred and eighty days after it opened, it is undisputed that Thornhill began operating the Thornhill gym in November 2013 and that Mr. Thornhill purchased the inversion table from Craig's List in "early [20]17." Thus, any inspection of the Thornhill gym within one hundred eighty days of its opening in November 2013 would not have led to the discovery of the inversion table, which was purchased more than three years later. Furthermore, as to any other inspection of the Thornhill gym, the franchise agreement, by its terms, provided that such inspections were permissive, and thus, do not establish an obligation on the part of Anytime.

Therefore, our *de novo* review of the record reveals that the plaintiffs did not submit evidence sufficient to show that Anytime had any control over the day-to-day procedures of the Thornhill gym or otherwise had custody, control or "garde" of the inversion table or the Thornhill gym premises or that Anytime was obligated to inspect the Thornhill gym. Absent such evidence, the plaintiffs failed to meet their burden of establishing a genuine issue of material fact. Therefore, based on the undisputed material facts, we must conclude, as a matter of law, that Anytime did not owe a duty to the plaintiffs and that summary judgment in favor of Anytime was appropriate.

## CONCLUSION

For all of the above and foregoing reasons, the March 9, 2022 judgment of the trial court is affirmed. All costs of this appeal are assessed to the plaintiffs, William Flynn and Billie Flynn.

**AFFIRMED.**