LEDET, J.,
dissents with reasons.
| Nor the following two reasons, I respectfully dissent from the majority’s decision affirming the trial court’s judgment in *384 this personal injury case. First, the jury instructions and interrogatories, taken together, were legally erroneous and that error was prejudicial! to the defendant, Southern.[1] Second, under the circumstances of this case in which no trier of fact decided the pivotal, intensely fact-bound issue of legal cause, I find it inappropriate to conduct a de novo review of the record; rather, a remand for a new trial is required. I separately address each of these two reasons below.

Legal error in the jury instructions and interrogatories taken together

| gSouthern assigns as error the trial court’s failure to instruct the jury on legal cause .and to include a question on legal cause ■in the jury interrogatories. Ms. Chatman counters that Southern waived this objection by failing to timely object as required by La. C.C.P. art. 1793 C.[2] ■ Alternatively, she contends that the jury instructions and interrogatories were proper. In order to address this issue, it is necessary, to summarize the pertinent procedural background.
Following the pretrial conference, Southern, as requested by the trial court, submitted proposed special jury instructions and a proposed jury interrogatory form. Southern’s Special Instruction No. 4, labeled “Legal Cause,” provided as follows:
I’ve told you earlier that, for Southern to be hable to Chatman, you would have to conclude that Southern’s conduct was sub-standard in relation to the rule which applies to his conduct (a reasonably prudent person under the circumstances), and that Southern’s conduct must have played a substantial part in causing Chatman’s injury. But there is a further finding that is necessary in order for you to render a verdict for the plaintiff. You must also consider whether a reasonable person, in doing or contemplating the acts or omissions with which Southern is charged, would have considered the general kind of injury as that suffered in this case as one of the dangers created or enhanced by its conduct. In other words, do you think that the standard applicable to Southern’s conduct was meant to cover what happened to this plaintiff.[3]-
Southern prefaced its proposed Special Instruction No. 4 with a footnote that read as follows:
It is within the province of the Court to decide the legal question of whether *385 any breach of duty by Southern is the legal cause |3of Chatman’s injuries. However, if the Court disagrees, Southern submits the proposed jury instruction on legal cause, to follow the Court’s instructions on the other requisite elements of a negligence claim.
During trial, at the May 14, 2015 charge conference, the proposed special jury instructions and the jury interrogatory form were discussed. The following colloquy ensued:
MR. BRADY [SOUTHERN’S COUNSEL]: Your Honor, I did see some ... cause-in-fact sort of language_ I didn’t see any language ... on the legal cause issue about ease of association.... THE COURT: What jury charge is that?
⅜ ⅜ ⅝ ⅛ :{«
MR. BRADY: That would be special Instruction No. 4, legal cause. And I guess my question was, with respect to legal cause, was Your Honor considering that an issue that you were going to decide after the jury verdict, or were you going — was that going to be allowed to go to the jury?
MR. IMPASTATO [COUNSEL FOR MS. CHATMAN]: I would submit to Your Honor that’s a legal issue. That’s not a — proximate cause is a legal issue, not — not a jury fact question. Cause-in-fact is a fact question, not proximate cause. Just like whether there was a duty.
THE COURT: Wait. What jury instructions are you-referring to?
MR. BRADY: I was referring to Defendant Special Instruction No. 4. But we agree that legal cause is a legal question that should be decided by the Court, I mean, after the verdict.
THE COURT: I believe that any legal question is for the Court to decide.
Based on the trial court’s finding that legal cause was a legal question for the court to decide, Southern’s Special Instruction No. 4 was omitted. The trial court adopted Southern’s proposed jury interrogatories form. . ...
After the jury began deliberating, the trial court called a conference to address an unrelated question posed by the deliberating jury. During that- conference, the trial court informed the parties that it had decided legal cause was a question of fact to be decided by the jury. Given the trial court’s change in | ¿position, Southern lodged both an oral and written objection 'to the jury instructions and interrogatories. Ms. Chatman argued to the trial court, as she does on appeal, that such objections were waived. Southern, on the other hand,' pointed out that it could not object to errors that had not yet occurred. It emphasized that the trial court decided that legal cause was a question for the jury only after the jury deliberations began. Finding Southern’s objection was preserved, the trial court reasoned that Southern did, in fact, timely raise the issue in the footnote prefacing its proposed Special Instruction No. 4. The trial court thus found “the argument is not new and it’s preserved.”
The trial court, however, disagreed with Southern’s contention that it was erroneous to exclude its Special Instruction No. 4 on legal cause.[4] The trial court found the *386 following portion of its special jury instructions, which was given to the jury, was the ease of association instruction:
To sum up this part, to find that the defendants’ conduct is substandard, you must find that an ordinary prudent person, under all of the surrounding circumstances, would reasonably have foreseen that, as a result of its conduct, súme such injury as the plaintiff suffered would occur and that the defendant failed to do what an ordinarily prudent person would have done. You may find it helpful to ask yourself, “How would an ordinarily prudent person have acted or what precautions would they have taken if faced with similar conditions or circumstances?” (Emphasis supplied.)
The trial court thus ruled that Special Instruction No. 4 was covered by its charges. As to the verdict form, the trial court’s response to Southern’s objection was that the verdict form it used was the one that Southern submitted. Southern then | ¿reminded the court that when it prepared the verdict form, “it was agreed by counsel this [legal cause] was a question of law, which meant the verdict form was fine. It wouldn’t be going to the jury if it’s a question of law.” The trial court, in response, reiterated its finding that the jury instructions it gave were not erroneous and covered legal cause.
Before addressing whether the jury instructions and interrogatories were erroneous, it is first necessary to decide whether the trial court was correct in finding that legal cause was a factual issue for the jury to decide. As the majority points out, “[although for years the issue of whether legal cause was a fact issue or a legal issue ‘baffled scholars and courts,’[5] in Parents *387 of Minor Child v. Charlet, 13—2879, p. 6 (La.4/4/14), 135 So.3d 1177, 1181, [cert. denied, — U.S. -, 135 S.Ct. 1154, 190 L.Ed.2d 923 (2015),] the Louisiana Supreme Court confirmed that legal cause is a mixed question of law and fact for the jury (or other fact-finder) to decide.”[6] It is well-settled that mixed questions of law and fact are for the trier of fact — here the jury — to decide. See Broussard v. State ex rel. Office of State Bldgs., 12-1238, p. 9 (La.4/5/13), 113 So.3d 175, 183. I thus find no error .in the trial court’s decision to submit the question of legal cause to the jury-
|7Nor do I find any error in the trial court’s finding that Southern preserved its right to object to the jury instructions and interrogatories. Although the majority finds that Southern preserved its right to object to the jury instructions, it finds that it waived its right to object to the jury interrogatories. I disagree. The same ra- *388 tionalé that supports a finding that Southern preserved its right to object to the jury instructions — that it objected at the earliest possible opportunity without any undue delay — likewise supports a finding that it preserved its right to object to the jury interrogatories.' Under the circumstances of this case, I find Ms. Chatman’s contention that Southern waived its objection to the jury instructions and jury interrogatories unpersuasive, I now turn to the issue of whether,'the trial court, in changing course on the factual versus legal nature of the legal cause issue, failed to instruct the jury accordingly.
Louisiana Code of Civil Procedure Article 1792 governs jury instructions; it provides that the trial court “shall instruct the jurors on the law applicable to the cause submitted to them.” La. C.C.P. art. 1792 B. “The trial court is responsible for reducing the possibility of -confusing the jury and may exercise the right to decide what law is applicable and what law the trial court deems inappropriate.” Adams v. Rhodia, Inc., 07-2110, pp. 5-6 (La.5/21/08), 983 So.2d 798, 804 (citing Baxter v, Sonat Offshore Drilling Inc., 98-1054, p. 6.(La.App. 1 Cir. 5/14/99), 734 So.2d 901, 906).
In Adams, the Louisiana Supreme Court provided the following guidance on reviewing jury instructions:
Adequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues. The trial judge is under no obligation to give any specific jury instructions that may be submitted by either , party; the judge must, however, correctly charge the jury. If the trial court omits an applicable, essential legal principle, its instruction does not adequately set forth the issues to be decided by the jury and may constitute reversible error. .
Adams, 07-2110 at p. 6, 983 So.2d at 804. The Supreme Court in Adams further explained that reviewing courts must assess the targeted portion of the jury instruction in the context of the entire jury charge; the Court stated:
In the assessment of an alleged erroneous jury instruction, it is the duty of the reviewing court to assess such impropriety in light of the entire jury charge to determine if the charges adequately provide the correct principles of law as applied to the issues framed in the pleadings and the evidence and whether the charges adequately guided the jury in its deliberation. Ultimately, the determinative question is. whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice. Nicholas v. Allstate Insurance Company, 99-2522, p. 8 (La.8/31/00), 765 So.2d 1017, 1023; see also Brown v. White, 405 So.2d 555, 560 (La.App. 4 Cir.1981), rev’d on other grounds on reh’g, 430 So.2d 16 (La.1983) (the question is whether the jury was misled to the extent that it was prevented from doing justice) and Jones v. Liberty Mutual Insurance Company, 568 So.2d 1091, 1094 (La.App. 5 Cir.1990), writ denied, 572 So.2d 72 (1991) (reversible "error occurs when the jury is misled to such an extent as to prevent it from doing justice).
Adams, 07-2110 at p. 7, 983 So.2d at 804; see also Larrea v. Cefalu, 14-0607, p. 6 (La.App. 4 Cir. 3/25/15), 162 So.3d 1224, 1228.
“The law is clear the review function is not complete once error is found. Prejudice to the complaining party cannot automatically be assumed from the mere fact of an error. Instead, the reviewing court must then compare the degree of the error with the adequacy of the jury instructions as a whole and the circumstances of the *389 case.” Wooley v. Lucksinger, 09-0571, p. 82 (La.4/1/11), 61 So.3d 507, 574. Generally, “ ‘the giving of an allegedly erroneous jury instruction will not constitute grounds for reversal unless the instruction is erroneous and the complaining party has been injured or prejudiced thereby.’ ” Wooley, 09-0571 at p. 81, 61 So.3d at 574 (quoting Rosell v. ESCO, 549 So.2d 840, 849 (La.1989)). Indeed, it is well-settled that “a reviewing court must exercise great restraint before it reverses a jury verdict due to an erroneous jury instruction.” Wooley, supra (citing Adams, 07-2110 at p. 6, 983 So,2d at 804; Nicholas, 99-2522 at p. 8, 765 So.2d at 1023). When the trial court fails to give proper instructions or 19interrogatories and the error taints the jury’s verdict, the verdict is disregarded; if the record is sufficiently complete for a de novo review, the appellate court makes an independent finding of fact. See Rigaud v. Deruise, 613 So,2d 761, 765 (La.App. 4th Cir.1993); Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La.1993).
Turning to the jury instructions that were given in this case, the jury was instructed that this is a negligence case and that there were three parts of the plaintiff’s case, which are as follows: (i) negligence or fault; (ii) “the injury the plaintiff suffered was, in fact, caused by the conduct of the defendant” (emphasis supplied); and (iii) that there was actual damage to the plaintiffs person. Summarizing this instruction, the trial court, in charging the jury, stated that the plaintiff “has to demonstrate: One, that the injury which she says she suffered was caused in whole or in part by the conduct of the defendant; two, that the conduct of the defendant was below the standards which I have told you are applicable to the defendant’s conduct; and, three, that there was damage to the plaintiffs person.” Likewise, in the jury interrogatories, the jury was required to find whether each listed actor was at fault for the attack on'the plaintiff; whether each listed actor was a “caüse-in-fact” of her injuries; and to determine the damages the plaintiff sustained'.
Southern contends that the jury had no opportunity to decide the issue of legal cause because both the jury instructions and the verdict form were silent on the issue. Stated otherwise, Southern points out that under the .duty-risk analysis, a plaintiff also must establish an additional element that the trial court’s jury instructions and interrogatories failed to address — legal cause. Southern stresses that the trial court’s instructions do not contain a reference to “legal cause,” “proximate cause,” “ease of association,” or any other formulation that adequately instructed the jury regarding the law on legal cause.
liflMs. Chatman counters that the trial court properly instructed the jury on legal cause within the court’s negligence instruction. She further countérs that this court in Chaisson v. Avondale Indus., Inc., 05-1511, p. 27 (La.App. 4 Cir. 12/20/06), 947 So.2d 171, 190, rejected the same argument that Southern raises here. In Chais-son, this court held that the trial court did not commit legal error by failing to give the appellant’s proposed charge on legal cause.[7] This court reasoned that “[t]he *390 main tenets of the proposed jury charge were subsumed into the actual jury charge/’ Chaisson, 05-1511 at p. 29, 947 So.2d at 191.
Even assuming — as the majority, citing Chaisson, finds in this case — that the jury instructions the trial court gave subsumed the question of legal cause, I nonetheless would find that the jury instructions and jury interrogatories, taken together, were erroneous. The error in this case lies in the trial court’s instruction to the jury that it was to decide only three issues — (i) cáuse-in-fact, (ii) fault or negligence, and (iii) damages — coupled with the jury interrogatories requiring the jury only to decide those same three issues. By confining the first issue the jury was to decide to cause-in-fact as opposed to “cause,” the trial court precluded the jury from deciding legal cause. See Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW § 4-1 (1996) (noting that “[t]he causal relationship consists of two separate elements: cause-in-fact and legal cause.”).
A commentator has explained the problem of drafting jury interrogatories in this context as follows:
| n [Generally,] the cause-in-fact issue shows up in reported litigation in company with the legal cause and/or breach issues. One recurrent trouble area involves jury interrogatories: in cases in which the evidence would support a finding of cause in fact, how should the [legal cause] question be put to the jury? Recent cases suggest three answers....
(a) In Clement v. Griffin, [91-1664, 92-1001, 93-0591-97, 93-0648 (La.App. 4 Cir. 3/3/94), 634 So.2d 412,] the fourth circuit concluded that the “legal cause” interrogatory and instructions used by the trial court failed to put the cause-in-fact issue before the jury at all.[8]
(b) In Chambers v. Graybiel, [25,840 (La.App. 2 Cir. 6/22/94), 639 So.2d 361], and Weaver v. Valley Electric Membership Corp., [615 So.2d 1375 (La.App. 2d Cir.1993),] the second circuit was satisfied with interrogatories that evidently tucked the cause-in-fact issue into the breach issue.
(c) More typically, courts seem to use a single “legal cause” interrogatory that is deemed to combine the cause-in-fact and legal cause/scope-of-protection inquiries. [See Bannerman v. Bishop, 28,382 (La.App. 2 Cir. 7/2/96), 688 So.2d 570 (quoting interrogatories asking the jury (a) whether the defendant was “guilty of any fault or negligence” and (b) whether “the negligence or fault of [defendant was] a proximate cause” of the injuries in the suit).]
David W. Robertson, The Vocabulary of Negligence Law: Continuing Causation Confusion, 58 La. L. Rev. 1, 25 (1997). Here, the trial court adopted none of the above three approaches; instead, the trial court posed solely the question of cause-in-fact. As a result, the jury was precluded from deciding the separate question of le *391 gal cause. In the context of the present case, I find the inclusion of cause-in-fact and the exclusion of legal cause in both the instructions and interrogatories was erroneous.
The error in the jury instructions and jury interrogatories was prejudicial to Southern. This is not a case in which the legal cause issue is insignificant.' To the | ^contrary, the legal cause issue, as demonstrated below, is a pivotal issue in this case.

Legal cause

As noted, this is, .a negligence case. “ ‘To establish negligence the plaintiff must prove: 1) duty of care to the plaintiff; 2) breach of the duty; 3) cause-in-fact;. 4) legal causation (scope); and 5) damages.’ ” Espinosa v. Accor N. Am., Inc., 14-1276, p. 8 (La.App. 4 Cir. 7/8/15), 174 So.3d 123, 128-29 (quoting Chaisson, 05-1511 at p. 8, 947 So.2d at 180). If a plaintiff fails to prove any one of the five elements, a defendant will not be held liable. Lemann v. Essen Lane Daiquiris, Inc., 05-1095, p. 7 (La.3/10/06), 923 So.2d 627, 633. On appeal, Southern contends that Ms. Chatman failed to prove two of these five elements — duty and legal cause. Given the posture of this appeal, the only relevant element is legal cause.
“ ‘Cause’ in legal cause demands an inquiry into whether a legal standard of care exists and requires delving into policies for and against extending the asserted legal standard of care to protect the particular plaintiff against the particular harm.” Todd v. State Through Dep’t of Soc. Servs., Office of Cmty. Servs., 96-3090, p. 6 (La.9/9/97), 699 So.2d 35, 38. “The essence of legal cause is whether the risk and harm encountered by the plaintiff falls within the scope of protection of the duty.” Barr v. Jacobson, 34,975, p. 3 (La.App. 2 Cir. 9/28/01), 795 So.2d 1244, 1246. “Every negligence case must be decided on its own facts and circumstances.” Todd, 96-3090, p. 7, 699 So.2d at 39 (citing Roberts v. Benoit, 605 So.2d 1032 (La.1991)). “There is no rule for determining the scope of the duty.” Morrison v. Kappa Alpha Psi Fraternity, 31,805, p. 14 (La. App. 2 Cir. 5/7/99), 738 So.2d 1105, 1117 (citing Roberts, supra). “Regardless if stated in terms of proximate cause, legal cause, or duty, the scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty.” Roberts, 605 So.2d at 1044 (citing Edwards v. State, 556 So.2d 644, 648-49 (La.App. 2d Cir.1990)).
Summarizing the scope of duty or legal cause inquiry, the Louisiana Supreme Court in Faucheaux v. Terrebonne Consol. Gov’t, 615 So.2d 289, 293-94 (La.1993), stated:
Rules of conduct are designed to protect some persons under some circumstances against some risks. Gresham v. Davenport, 537 So.2d 1144, 1147 (La.1989); Malone, Ruminations on Cause-in-Fact, 9 Stan.L.Rev. 60, 73 (1956). The scope of protection inquiry asks whether the enunciated rule extends to or is intended to protect this plaintiff from this type of harm arising in this manner. Crowe, The Anatomy of Tort-Greenian, As Interpreted by Crowe Who Has Been Influenced by Malone—A Primer, 22 Loy.L.Rev. 903 (1976). In determining the limitation to be placed on liability for defendant’s substandard conduct, the proper inquiry is often how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced. Hill [v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972) ].
■ When the circumstances of the injury cannot reasonably be foreseen or anticipated, the scope of a duty may not encompass the risk encountered because of the lack of an ease of association between the risk of *392 injury and the.duty. See Lazard v. Foti, 02-2888, p. 6 (La.10/21/03), 859 So.2d 656, 661 (citing Hill, supra). Legal cause thus requires a determination of whether the duty was designed to protect-fhe class of claimants of -which plaintiff is a member from the hazard she encountered.[9]
The legal cause or scope of duty inquiry “assumes a duty exists and questions whether the injury the plaintiff suffered is one of the risks encompassed 114by the rule of law that imposed the duty.” Roberts, 605 So.2d at 1044. Stated differently, “[f]or the purpose of á legal cause determination, we can assume a breach of duty which is the cause in fact of the plaintiffs damages.” Perkins, 98-2081-83 at p. 31, 756 So.2d at 410.
In this case, Southern’s duty was defined in the jury instructions as follows:
Universities have a duty to provide a safe campus and to act with a reasonable regard for the students’ safety.[10] The presence of a security guard in a position where he can be seen by potential criminals has a deterrent effect on criminal activity in the area.[11]
Although a university also has a duty to implement reasonable measures to protect its students on the premises from criminal acts, those criminal acts must be foreseeable. The most important factors for you to consider in determining whether a criminal act is foreseeable is the existence, frequency, and similarity of prior incidents of crime on the premises. However, the location, nature, and condition of .the'property should also be taken into account.[12]
Universities do not stand in loco par-entis — in the place of parents — to their students. Attempts to foster the educational process and the growth and maturation of students have relieved universities of many of their protective duties. Modern college students are considered adults capable of protecting *393 their own interests. They, demand and receive increased autonomy and decreased regulation both on and off campus.[13]
| ^Southern contends that the only seemingly relevant duties that Ms. Chatman has identified are two-fold: a general duty to provide security,[14] and a duty to enforce its internal rules prohibiting guests from staying overnight in leased apartments.[15] Southern contends that Ms. Chatman has not shown an ease of association between the risk of a sudden,.criminal attack by her hand-picked roommate, within their shared apartment, in a dispute over missing food, and a general dúty.to provide Security or a university policy that unregistered guests should not stay past 2:00 a.m.[16] Given-that legal cause is absent, Southern contends that it is not negligent' as a matter of law.
|1fiMs. Chatman counters that Southern frames the legal cause inquiry too narrowly; the correct inquiry, she contends, is whether the “general manner of harm was foreseeable.” Cay v. State, Dep’t of *394 Transp. & Dev., 93-0887 (La.1/14/94), 631 So.2d 393, 399;[17] see also Smith v. Louisiana Health & Human Res. Admin., 93-1434, p. 8 (La.App. 4 Cir. 5/18/94), 637 So.2d 1177, 1184.[18] Ms. Chatman contends that the harm she suffered was within the “scope of the general range of risks” that Southern foresaw from a lack of security measures, including available residential facility staff such as the community assistants (“CAs”).
According to Ms. Chatman, the availability of CAs was an essential part of Southern’s security measures for its on-campus housing. She points out that the CAs were hired to live in the housing facility to be the eyes and ears of the university in the housing facility, reporting any issues in' the housing facility to the campus police or housing office as needed.[19] Ms. Chatman contends there is an 117ease of association between Southern’s rules and security measures and the risk of a criminal attack by a non-student/non-resident living on campus. Ms. Chatman further contends that Southern’s rules and security measures were intended to create the sort of visibility that would deter individuals— such as Ms. Sanders and her guest, Jami-sha — from criminal behavior. According to Ms. Chatman, she suffered a criminal attack by the precise sort of person — a non-student/non-resident minor — that Southern’s rules and security measures were intended to exclude from residing on campus.[20] Ms. Chatman thus contends that legal cause was established.
As the above synopsis of the parties’ diametrically opposed positions on the legal cause issue demonstrates, the legal cause issue presented in this case is intensely “fact-bound.” See Roberts v. Benoit, 605 So.2d 1032, 1055 (La.1992) (on reh’g). Indeed, “ ‘[generally, the scope of *395 protection inquiry becomes significant in “fact-sensitive” cases in which a limitation of the “but for” consequences of the defendant’s substandard conduct is warranted. Fowler [v. Roberts,], 556 So.2d [1,] 6 [ (La.1989).] These cases require logic, reasoning and policy decisions be employed to determine whether liability should be imposed under the particular factual circumstances presented.’ ” Haydin v. Crescent Guardian, Inc., 01-1986, p. 12 (La.App. 4 Cir. 5/15/02), 818 So.2d 1033, 1041. Such is the case here.
Legal cause is thus a pivotal issue in this case. The error in the jury instructions and interrogatories, taken together, therefore was prejudicial to |1sSouthern. This finding that the error was prejudicial requires a determination of the appropriate course of appellate action — a de novo review of the record or a remand for a new trial. For the reasons explained below, I find a remand for a new trial is required here.

Remand for a new trial

In Louisiana, unlike in other states, a trial court’s prejudicial error involving jury instructions or interrogatories generally affects only the standard of appellate review — a de novo as opposed to a manifest error standard. 1 Frank L. Maraist & Harry T. Lemmon, LA. CIV. L. TREATISE, CIVIL PROCEDURE § 14:15 (1999) (hereinafter “Maraist & Lem-mon”). “Because a Louisiana appellate court in civil cases has the constitutional power to réview facts, the appellate court, when there is a complete record, generally will review the record without according any deference to the trial court, whether judge or jury, and will render judgment on the merits based on the de novo review of the record, rather than remand the case for a new trial.” Id. The Louisiana Supreme Court recognized an exception to this general rule in Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707, 708 (La.1980).- Explaining the- exception, the Supreme Court stated the following:
This is not to say, and Gonzales [v. Xerox Corp., 254 La. 182, 320 So.2d 163 (1975)] should not be read to require, that the appellate court must find its own facts in every such case. There are cases where the weight of the evidence is so nearly equal that a first-hand view of witnesses is essential to a fair resolution of the issues. The appellate court must itself decide whether the record is such that the court can fairly find a preponderance of the evidence from the cold record. Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial. ¡
Ragas, 388 So.2d at 708.
Thereafter, the Louisiana Supreme Court, in a pair of per curiam decisions, called into doubt the continued validity of the exception to a de novo review it recognized in Ragas—Willis v. Letulle, 581 So.2d 1048 (La.Ct.App. 1st Cir.), vacated and remanded, 583 So.2d 484 (La.1991); and Gunn v. Amica Mut. Ins. Co., 600 So.2d 849 (La.Ct.App.3d Cir.), vacated and remanded, 604 So.2d 957 (La.1992). Citing this pair of per curiam decisions, a treatise states that “the appellate court almost always is required to decide the case on the record,” Maraist & Lemmon, § 14:15. In its more recent decisions, however, the Supreme Court has not only cited with approval, but also applied the exception it recognized in Ragas. Jones v. Black, 95-2530 (La,6/28/96), 676 So.2d 1067; Masters v. Courtesy Ford Co., 00-1330 (La.6/30/00), 765 So.2d 1055; Wegener v. Lafayette Ins. Co., 10-0810 (La.3/15/11), 60 So.3d 1220.
In Jones, the Supreme Court noted that “[a]fter taking the unusual step of sending for and reviewing the entire record in this *396 case,” it was convinced the Bagas exception applied. Quoting Ragas, the Supreme Court held that this case is one in which ‘“the weight of the evidence is so,nearly equal that a first-hand view of witnesses is essential to a fair resolution of the issues.’ ” Jones, 96-2530 at p. 1, 676 So.2d at 1067 (quoting Ragas, 388 So.2d at 708). The Supreme Court thus vacated the appellate court’s decision and remanded the case for a new trial.[21]
Citing Jones and Ragas, the Supreme Court in Masters reasoned that “[although the court of appeal correctly found the district court erred in excluding Randy Rainwater’s statement, the court of appeal erred in conducting a de novo review of the record in this ease, where a view of the witnesses is essential to a fair resolution of conflicting evidence.” Masters, 00-1330 at p. 1, 765 So.2d at 1055. The Supreme Court thus vacated the appellate court’s decision and remanded for a new trial at which Mr, Rainwater’s statement could be admitted.
| anIn Wegener, the Supreme Court cited La. C.C.P. art. 2164 as authorizing an appellate court to remand a case to the trial court for proper consideration when the interest of justice so requires. 10-;0810 at pp. 19-20, 60 So.3d at 1233-34.[22] In that case, the Supreme Court held that a remand for a new trial, rather than a de novo review, was appropriate due to prejudicial jury instructions regarding whether the plaintiffs — the Wegeners — were entitled to damages and penalties under La. R.S. 22:1220. Citing the exception in Ragas, the Supreme Court concluded that the interest of justice was best served by remanding the case for a new trial. In reaching that result, the Supreme Court reasoned as follows: • ■ :
After considering this ■ standard, we conclude that under the specific facts and circumstances of this case, and the particular legal errors involved, a remand of the case for a new trial is dictated. The issues affected by the legal errors are damages and penalties under La. R.S. 22:1220, primary components of 'the Wegeners’ case. Whether the Wegeners suffered mental distress as a result óf Lafayette’s adjustment of their insurance claim, and whether the Wegeners are entitled to penalties due to Lafayette’s breach of its duties under this statute are both issues which are affected greatly by the credibility of the plaintiffs and the claims personnel from Lafayette. We find these issues necessarily require the fact finder to examine first-hand the witnesses’ demeanor and testimony. We cannot, by examination of .the cold record alone, properly determine the issues involved.
Wegener, 10-0810 at 20, 60 So.3d at 1234.[23]
| P„In sum, the current state of the jurisprudence is as follows:
*397 In certain cases, a preponderance of the evidence cannot be determined fairly from a cold record, such as when there is substantial testimonial conflict that can only be resolved depending upon the fact-finder’s.view of the witnesses’ credibility. In such cases the appellate court may conclude that the appropriate remedy is to remand for a new trial,
Oddo v. Asbestos Corp. Ltd., 14-0004, p. 17 (La.App. 4 Cir, 8/20/15), 173 So.3d 1192, 1205, writ denied, 15-1712 (La.11/6/15), 180 So.3d 308 (citing Palumbo, 11—0769 at p. 12, 81 So.3d at 930; Diez, 94-1089 at *398 pp. 6-7, 657 So.2d at 1070-71). “Whether a particular case should be remanded is a matter which is vested largely within the court’s discretion and depends upon the circumstances of the case.” Wegener, 10-0810 at p. 20, 60 So.3d at 1234 (citing Alex v. Rayne Concrete Service, 05-1457 (La.1/26/07), 951 So.2d 138, 155).
Applying the above principles to the circumstance of this case, I find a remand for a new trial is required for two interrelated reasons. First, neither the trial court nor the jury determined the issue of legal cause. Second, as demonstrated above, the issue of legal cause in this case is an intensely fact-bound, pivotal issue. Accordingly, I would reverse the trial court’s judgment and remand for a new trial.

. The plaintiff, Gloria Chatman, commenced this suit against Southern University at New Orleans, the Board of Supervisors at Southern University and Agricultural and Mechanical College, on behalf of Southern University of New Orleans, the Southern University System, Southern University and Agricultural and Mechanical College, and Victory Ukpolo. Mr. Ukpolo, Southern University's Chancellor, was voluntarily dismissed before trial. As one of the attorneys pointed out at the beginning of the trial, "there is really just one entity that has been named in different ways.” For ease of reference, the defendants are referred to in this dissent collectively as "Southern.”

. La. C.C.P. art. 1793 C provides as follows:
A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to' consider its verdict or immediately after the juiy retires, stating specifically the matter to which he objects and the grounds of his objection. If he objects pri- or to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury.

.Southern cites the source of the above instruction as 18 H. Alston Johnson, III, LA. CIV. L. TREATISE, CIVIL JURY INSTRUCTIONS § 3:16 (3d ed. 2015). This section is entitled "Duty/risk” instruction — Emphasis on duty/risk.” Southern points out that its proposed instruction addresses the limits imposed on a party’s legal duty.

. In so ruling, the trial court cited three reasons. First, the trial court noted that, the instructions that it gave — aside from the special jury charges — were adapted from the Louisiana Supreme Court's uniform jury charges that every division in every parish of the state must now use. . See La. Sup. Ct. Rule 44. See also 18 H. Alston Johnson, III, LA. CIV. L. TREATISE, CIVIL JURY INSTRUCTIONS § 3:1 (3d ed. 2015) (noting the adop *386 tion of "the mandatory pattern jury instructions ... by the Supreme Court of Louisiana in its Rule 44, effective October 15, 2014.”). Continuing, the trial court characterized the manner in which Special Instruction No. 4 was written as "very confusing.” Second, the trial court emphasized that the phrase "ease of association” was not present in Special Instruction No. 4. Third, the trial court noted that what Special Instruction No. 4 addressed was "the conduct as it relates to the injury, the ease of association.”

. Justice, then Judge, Weimer extensively addressed the issue of whether legal cause is purely a question of law in the appellate court opinion in Perkins v. Entergy Corp., 98-2081-83, p. 34 (La.App. 1 Cir. 12/28/99), 756 So.2d 388, 412, n. 52, aff’d, 00-1372, 00-1387, 00-1440 (La.3/23/01), 782 So.2d 606, stating:
The interrelated issue of whether legal cause is a fact issue or a legal issue has baffled scholars and courts for decades and begs for resolution in Louisiana. See [David W.] Robertson, [The Vocabulary of Negligence Law: Continuing Causation Confusion,] 58 La.L.Rev. [1,] 19 [(1997)]: "The Louisiana Supreme Court has vacillated on whether legal cause should be a question of law [subject to de novo review] or a question of fact [subject to manifest error review], and the lower court decisions sometimes reflect the uncertainty. However, prevailing practice [at the trial level] treats the issue [of legal cause] as one for the trier of fact. (Footnotes omitted.)” Robertson cites Kenney v. Cox, 95-0126 (La.3/30/95), 652 So.2d 992, 992 (Dennis J., concurring): "I feel that our jurisprudence has not clarified the distinction between the existence of a general duty of care (a legal question) and the 'legal cause’ or ‘duty/risk’ question of the particular duty owed in a particular factual context (a mixed question of law and fact)[.]” Also cited is Freeman v. Julia Place Limited Partners, 95-0243 (La.App. 4 Cir. 10/26/95), 663 So.2d 515, 517, writ denied, 95-2808 (La.1/26/96), 666 So.2d 680, which documents the vacillation.
If legal cause, which essentially serves the same purpose as scope of duty or proximate cause, is "a mixed question of law and fact," it should be resolved by the jury at the trial level and then be subject to manifest error review at the appellate level. As indicated, Fowler [v. Roberts,] 556 So.2d [1,] 4 [(La.1989)], listed five elements for evaluating negligence: the duty element is to be decided by the judge, but the other four elements of breach, cause in fact, scope of liability (legal *387 cause) and damages, are to be decided by the ■jury unless reasonable minds could not differ. See also Wilson [v. State Through Dep't of Pub, Safety & Corr.], 576 So.2d [490,] 493 [(La.1991)]. This division of labor between the judge and jury is essentially what is proposed in W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 45, 319-321. “[T]he hornbook says proximate cause is a question for the jury. As such, one would expect a court to review a jury decision on proximate cause much as it would review any jury determination, with great discretion accorded the fact-finder.” [Thomas C.] Galligan, [Jr., A Primer on the Patterns of Negligence], 53 La.L.Rev. [1509,] 1513 [ (1993) ]. Consider Reed v, Wal-Mart Stores, Inc., 97-1174, pp. 3-4 (La.3/4/98), 708 So.2d 362, 364, holding that whether a thing creates an unreasonable risk of harm is a mixed question of law and fact and, thus, subject to the manifest error standard of review. See also LSA-C.C.P. art. 1812(C)(1)(a), which provides the jury is to answer the legal cause question. See also [David W.] Robertson, [Allocating Authority Among Institutional Decision Makers in Louisiana State-Court Negligence and Strict Liability Cases,] 57 La. L. Rev. [1079,] 1104 [ (1997)] and 58 La.L.Rev. at 34, wherein the author makes the argument for allowing the trier of fact (judge or jury) to decide legal cause issues.
However, if legal cause is a question of law, it should be decided by the judge, as opposed to the jury, at the trial level and be subject to de ’novo review at the appellate level. See Todd [v. State Through Dep't of Soc. Servs., Office of Cmty. Servs., 96-3090, pp.] 6-7 [(La.9/9/97)], 699 So.2d [35,] 38-39, wherein the Louisiana Supreme Court states unequivocally that legal cause is purely a legal issue. Todd never mentions Fowler or Wilson. See also Galligan, 53 La.L.Rev, at 1522-1525, noting Professors Green and Malone, the fathers of duty-risk analysis, indicated it was the obligation of the judge to determine whether the duty extended to encompass a particular risk.

. There, the Louisiana Supreme Court held that legal cause is a mixed question of law and fact, reasoning as follows:
Whether this particular priest [defendant] owed this particular duty to the plaintiffs in this particular factual context is a mixed question of law and fact. See Kenney v. Cox, 95-0126, p. 1 (La.3/30/95), 652 So.2d 992 (Dennis, J., concurring) (noting there is a "distinction between the existence of a general duty of care (a legal question) and the 'legal cause’ or 'duty/risk’ question of the particular duty owed in a particular factual context (a mixed question of law and fact)”); see also Pitre v. Louisiana Tech University, 95-1466, 95-1487, p. 22 (La.5/10/96), 673 So.2d 585, 596 (Lemmon, J., concurring; joined by Kimball, J.) (noting "[i]n the usual case where the duty owed depends upon the circumstances of the particular case, analysis of the defendant’s conduct should be done in terms of 'no liability' of ‘no breach of duty.’ ”).
Charlet, 13-2879 at p. 6, 135 So.3d at 1181; see also Carr v. Sanderson Farm, Inc., 15-0953, p. 4 (La.App. 1 Cir. 2/17/16), 189 So.3d 450, 456 (citing Charlet for the proposition that "whether a particular defendant owes a particular duty to a plaintiff in a particular factual context is a mixed question of law and fact.”); Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW § 5-2 (1996) ("Duty is generally considered a question of law for the judge, but legal causation is a mixed question of law and fact that the jury decides.”).

. The appellant in Chaisson requested the following instruction to the jury:
In order to find the defendant's conduct substandard, you must also determine whether a reasonable person under all circumstances surrounding his conduct,- would have reasonably foreseen as a result, of his conduct, some such injury as Mrs. Chaisson suffered, and you must also find that it failed to exercise reasonable care to avoid the injury. In other words, do you think that the standard applicable to the defendant's conduct was meant to cover what happened to Mrs. Chais-son. ’
*390 Chaisson, 05-1511 at pp. 27-28, 947 So.2d at 190.

. Ms. Chatman cites Clement v. Griffin, 91-1664, 92-1001, 93-0591-97, 93-0648 (La.App. 4 Cir. 3/3/94), 634 So.2d 412, 431, for the propositions that "the definition of legal cause is too broad and too vague to be left to the jury” and that a jury interrogatory on legal cause is problematic because it asks the jury to answer on "an amorphous concept which could not have been understood by the average juror." Id. Ms. Chatman's reliance on Clement is misplaced. In Clement, a products liability case, this court noted that the context of the interrogatory indicated that the trial judge was seeking a decision on whether a manufacturing defect in a tire was a cause-in-fact of the accident, not a legal cause.

. To illustrate, Justice Lemmon in Fowler v. Roberts, 556 So.2d 1, 8, n. 14 (La.1989), cited Lewis v. Kehoe Academy, 346 So.2d 289 (La.App. 4th Cir.1977), as an example of the use of the scope of protection element to' limit the “but for" consequences of a defendant’s negligent conduct, noting:
[In Lewis,] Plaintiffs’ small child, while at a day care center, ingested rat poison which exaggerated the appearance of some minor bruises. The juvenile authorities, upon seeing the bruises, sought to remove the child from plaintiffs’ custody. The court held that the defendant's duty to prevent young campers from ingesting rat poison did not encompass the risk that, if the poison causes accentuation of subsequently incurred bruises, the juvenile court will reach the erroneous conclusion that the child was neglected.

. See Williams v. State, 34,691, pp. 6-7 (La.App. 2 Cir. 5/9/01), 786 So.2d 927, 932 (holding that "the universities’ general duty to provide a safe campus and to act with reasonable regard for their students’ safety remained constant.").

. See Peterson v. Doe, 94-1013, p. 7 (La.App. 4 Cir. 12/15/94), 647 So.2d 1288, 1292 (holding that "the presence of a security guard in a position where he can be seen by potential criminals has a deleterious effect on criminal activity in the area.”).

. See Williams, 34,691 at p. 7, 786 So.2d at 932 (holding that “[t]he question of whether ' such a duty extends to protect students from the criminal acts of third parties is very similar to the issue presented in Posecai [v. Wal-Mart Stores, Inc., 99-1222 (La.11/30/99), 752 So.2d 762], The university/student relationship, where students reside as guests or patrons iñ a dormitory, parallels the relationship of a, business and its customers. Accordingly, following Posecai, we find that a university likewise has a duty to implement reasonable measures to protect its students in dormitories from criminal- acts when those acts are foreseeable.”); see also Boyd v. Cabelo, 15-1085, pp. 4-5 (La.App. 4 Cir. 3/16/16), 191 So.3d 59, 62 (finding student stated a cause of action against university for attack in college dormitory and citing Williams, supra).

. See Brennan v. Bd. of Trustees for Univ. of Louisiana Sys., 95-2396, p. 11 (La.App. 1 Cir. 3/27/97), 691 So.2d 324, 331 (citing Box v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 576 So.2d 978, 982 (La.1991); and Pitre v. Louisiana Tech University, 95-1466, 95-1487, p. 21 (La.5/10/96), 673 So.2d 585, 595).

. Southern points out that security measures generally are intended to protect against intruders — external threats — not roommates and their invited guests — internal threats. To illustrate, Southern cites Peterson v. Doe, 94-1013 (La.App. 4 Cir. 12/15/94), 647 So.2d 1288, in which this court found an ease of association between the risk of a student being shot by a third party — an external threat— and a security counselor’s refusal to accompany the student to his car upon his request. Southern emphasizes that Ms. Chatman’s roommate, Ms. Sanders, and her guest, Jami-sha, were internal, not external, threats. Ms. Sanders was a co-lessee and lawfully in-her own apartment when she attacked Ms. Chat-man. Jamisha was Ms. Sanders' guest. According to Southern, "[n]o reasonable security measure is aimed to guard against that.”

. According to Southern, the primary purpose of its rule against-overnight guests (after 2:00 a.m.) is to avoid nonresidents overstaying their welcome — living on campus without paying rent and becoming squatters. Even assuming a safety — as opposed to strictly a financial — concern behind the rule, Southern emphasizes the lack of a prohibition against guests before 2:00 a.m. The fight occurred around 10:00 p.m. Therefore, Southern con- . tends that the rule was inapposite. Regardless, even assuming that the rule established a duty on the part of Southern to search out guests after 2:00 a.m. to ensure registration, Southern contends that such a duty has no ease of association with the harm Ms., .Chat-man suffered.

.Southern further contends that even taking into account the non-student’s (Jamisha's) , mere presence as a factor in the attack on Ms. Chatman, the following multi-step chain of events is far too attenuated to satisfy a finding of legal cause:
1. If security measures had prevented Jami-sha from visiting the apartment, the bulk of Ms. Chatman’s food might not have been eaten.
2. If her food had not been eaten,-Ms. Chat-man would not have been upset that much of the food had been-consumed.
3. If Ms. Chatman had not been upset, she would not have hidden the remaining food in her bedroom.
4. If Ms, Chatman had not hidden the food, Terneisha would not have asked her where it was.
5. If Terneisha had not asked Ms. Chatman where the food was, Ms. Chatman would not have misstated the food’s whereabouts.
6. If Ms. Chatman had not misstated the food’s whereabouts, Terneisha would not have become enraged when she realized the food was, in fact, in Ms. Chatman’s bedroom.
.7. If Terneisha had not become enraged about Ms. Chatman's misstatement, she would not have attacked Ms. Chatman.
Southern thus contends that there is simply no ease of association between the absence of additional security measures and this bizarre, attenuated, chain of events.

. In Cay, the Supreme Court held that “[t]he fact that the precise manner of harm (an intoxicated person’s staggering or being frightened toward a bridge railing) may not have been anticipated does not break the claim of causation. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 43 (5th ed. 1984). There is an ease of association between an accidental fall over the railing of a bridge and the failure to build the railing to a height above an average person’s center of gravity.” 631 So.2d at 399. "

. In Smith, this court held that “[w]hile the particular harm that befell Mr. Smith might not have been foreseeable, that harm lay within the scope of the general range of risks to which Mr. Smith was peculiarly subject.” 93-1434 atp. 8, 637 So.2d at 1184.

. Ms. Chatman contends that the tension between her and her roommate (and the other nonstudents the roommate had living in the apartment) was much deeper than a simple, isolated argument over food. She points out that at least one nonstudent — Ms. Sanders’ boyfriend — was beating on the windows and door, trying to get into their unit. She further points out that other nonstudents — Jami-sha and her boyfriend. — allowed the apartment to be left unlocked. To address the problem, Ms. Chatman testified that she unsuccessfully attempted to speak to the CA multiple times before the attack and that she attempted to go to the residential housing office, but it was closed. I note, however, that.neither Ms. Sanders’ boyfriend nor Jami-sha’s boyfriend was involved in the fight. Nor was the fight caused by leaving the door to the apartment unlocked. I further note that Ms. Chatman acknowledged that before the attack the problem with her roommate and her roommate’s guests never reached the level that she felt the need to call campus security. Indeed, Ms. Chatman testified that before the attack, she was not physically in fear for her physical safety or of an assault; instead, she was bothered by all the comings and goings of guests, the commotion, the noise, and the mess.

.Ms. Chatman testified that what she believed Southern could have done differently to prevent her attack was that ”[t]hey could’ve had more security. They could’ve had their residents [CAs] more available to us. They could’ve — you know, it just — they could have signs stating where a resident [CA] was.”

. See Salassi v. State, Dep't of Pub. Safety & Corr., Admin. Hearing Section, 96-0321, p. 4 (La.App. 1 Cir.11/15/96), 684 So.2d 1014, 1016, n. 2 (noting that ‘‘[t]his court in Willis v. Letulle, 597 So.2d 456 (La.App. 1st Cir. 1992), cast doubt on the continued viability of a Ragas remand for retrial where a first-hand view of the witnesses is necessary for a fair resolution of the matter. However, the Supreme Court in Jones reiterated its holding in Ragas and ordered a remand for that reason,”)

. La. C.C.P. art, 2164 provides as follows:
The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate ■ court; or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

.Below is a collection of appellate court cases in which the Ragas exception has been applied and the matter remanded for a new *397 trial; in each of these cases, the Louisiana Supreme Court has denied writs:
• Abney v. Smith, 09-0794, p, 12 (La.App. 1 Cir. 2/8/10), 35 So.3d 279, 287, writ denied, 10-0547 (La.5/7/10), 34 So.3d 864 (reasoning that "[b)ecause a preponderance of the ■ evidence cannot be determined fairly from the cold record due to the substantial conflict in testimony on the condition of the single stop sign situated in the right-of-way that buttressed’ the gas station, remand is proper in this case.”);
• Palumbo v. Shapiro, 11-0769, p. 12 (La.App. 4 Cir. 12/14/11), 81 So.3d 923, 930, writ denied, 12-0140 (La.3/23/12), 85 So,3d 93 (reasoning that "we cannot conduct a de novo review, but must instead remand the matter for a new trial because-a view of the witnesses is essential to a fair resolution of the conflicting evidence. Specifically, the remaining defendants, especially Mr. Pigg and Mr. Bartels, hold 'to the position that they cannot be liable for malpractice because they never entered into an-attorney-client relationship with Palumbo.”);
• Delo Reyes v. Liberty Mut. Fire Ins, Co., 08-0769, pp. 4-5 (La.App. 4 Cir. 2/18/09)) 9 So.3d 890; 893, writ denied, 09-0898 (La.6/5/09), 9 So.3d 874 (reasoning that "[t]he plaintiffs complain of debilitating injuries, similar to injuries sustained in a previous automobile accident, while the defendants are contesting the issue of negligence as well as causation” and finding that “the allegations and defenses in the case sub judice are of a nature that necessitates the witnesses' credibility be taken into account to such a degree that rendering a just verdict on a cold record would not be possible.”);
Mladenoff v. Louisiana Med. Mut. Ins.. Co., 13-477, p. 8 (La.App. 5 Cir. 3/26/14), 139 So.3d 8, 13, writ denied, 14-0862 (La.6/20/14), 141 So.3d 813 (finding that "this case is one in which a view of the witnesses is essential to a fair resolution of the evidence and issues.”);
Hoffman v. Paracelsus Elmwood Med. Ctr., Inc., 03-0659 (La.App. 4 Cir. 9/1/04, 16-17); 881 So.2d 796, 807, writs denied, 04-2683, 04-2651 (La.1/7/05), 891 So.2d 690, 694 (finding that "the -weight of the evidence is so nearly equal that a firsthand view of the witnesses is essential to a fair resolution of the issues.”);
Franklin v. Franklin, 05-1814, pp. 8-9 (La. App. 1 Cir. 12/22/05), 928 So.2d 90, 94, writ denied, 06-0206 (La.2/17/06), 924 So.2d 1021 (reasoning that "[t]he trial court’s firsthand view of the witnesses is necessary for a fair determination of credibility, especially in this custody case with equivocal allegations of child abuse. With such substantial conflicts and the need for numerous credibility determinations, a preponderance of the evidence cannot be fairly determined from this cold record. Therefore, we are convinced that the interests' of justice will be best served by remanding this case for a new trial.”); and
Diez v. Schwegmann Giant Supermarkets, Inc., 94-1089, pp. 6-7 (La.App. 1 Cir. 6/23/95), 657 So.2d 1066, 1070-71), Writ denied, 95-1883-(La. 1 1/17/95), 663 So.2d 720 (reasoning that a remand was appropriate in, slip- and-fall case in which credibility of the witnesses was pivotal given the testimony of the defendant’s employees and others involved in assisting after the plaintiff’s fall occurred was the only available proof and that the court would not "attempt to make credibility determinations on the cold record and thus deprive plaintiffs of their right to ¿resent their case before a trier of fact.”).
See also Gorman v. Miller, 12-0412, pp. 8-9 (La.App. ,1 Cir. 11/13/13), 136 So.3d 834, 841, writ denied, 13-2909 (La.3/21/14), 135 So.3d 620 (remanding for new trial and noting that "in limited circumstances,' when necessary to reach a just decision and to prevent a miscarriage of justice, an appellate court' should remand the case to the trial court under the authority of Code of Civil Procedure article 2164, rather than undertaking de novo review.”).